# In the United States Court of Appeals
## FOR THE SEVENTH CIRCUIT

LSP TRANSMISSION HOLDINGS II, LLC, *et al.*,
PLAINTIFFS-APPELLEES,

*v.*

JAMES F. HUSTON, *Chairman, Indiana Utility Regulatory Commission, et al.*,
DEFENDANTS-APPELLANTS,

*and*

NORTHERN INDIANA PUBLIC SERVICE COMPANY, *et al.*,
INTERVENOR-DEFENDANTS-APPELLANTS.

On Appeal From The United States District Court
For The Southern District Of Indiana
Case No. 1:24-cv-1722-TWP-MG
The Honorable Tanya Walton Pratt, Chief Judge

**INTERVENOR-DEFENDANTS-APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL AND REQUEST FOR ADMINISTRATIVE STAY**

*(Counsel listed on following page)*

WILLIAM R. DERASMO
TROUTMAN PEPPER
HAMILTON SANDERS LLP
401 9th Street, N.W.
Suite 1000
Washington, D.C. 20004
(202) 274-2886
william.derasmo@troutman.com

MISHA TSEYTLIN
*Counsel of Record*
KEVIN M. LEROY
KAITLIN L. O'DONNELL
SIERRA C. STOCKLEY
TROUTMAN PEPPER
HAMILTON SANDERS LLP
227 W. Monroe, Suite 3900
Chicago, Illinois 60606
(608) 999-1240 (MT)
(312) 759-1938 (KL)
(302) 777-6541 (KO)
(215) 981-4692 (SS)
misha.tseytlin@troutman.com
kevin.leroy@troutman.com
kaitlin.o'donnell@troutman.com
sierra.stockley@troutman.com

*Attorneys for Intervenor-Defendants-Appellants Northern Indiana Public Service Company, Indianapolis Power & Light Company, d/b/a AES Indiana, Southern Indiana Gas and Electric Company d/b/a CenterPoint Energy Indiana South, and Duke Energy Indiana, LLC*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

ARGUMENT ........................................................................................................ 2

    I.   Intervenor Defendants Are Likely To Succeed On The Merits .......................... 2

    II.   The Equitable Considerations Weigh In Favor Of A Stay ................................ 8

CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

### Cases

*Colon Health Ctrs. of Am., LLC v. Hazel,*
　813 F.3d 145 (4th Cir. 2016) ................................................................................. 5

*Dean Milk Co. v. City of Madison,*
　340 U.S. 349 (1951) ............................................................................................ 4, 5

*Elec. Power Supply Assoc. v. Star,*
　904 F.3d 518 (7th Cir. 2018) ................................................................................. 8

*Fla. Trans. Servs. Inc. v. Miami-Dade County,*
　703 F.3d 1230 (11th Cir. 2012) ............................................................................. 5

*Gen. Motors Corp. v. Tracy,*
　519 U.S. 278 (1997) ..................................................................................... passim

*Lewis v. BT Inv. Managers, Inc.,*
　447 U.S. 27 (1980) ................................................................................................ 4

*Il. Com. Comm'n v. FERC,*
　721 F.3d 764 (7th Cir. 2013) ................................................................................. 8

*LSP Trans. Holdings, LLC v. Sieben,*
　954 F.3d 1018 (8th Cir. 2020) ....................................................................... 3, 5, 6

*Minnesota v. Clover Leaf Creamery Co.,*
　449 U.S. 456 (1981) .............................................................................................. 7

*MISO Trans. Owners v. FERC,*
　819 F.3d 329 (7th Cir. 2016) ................................................................................. 8

*New York v. FERC,*
　535 U.S. 1 (2002) .................................................................................................. 8

*NextEra Energy Cap. Holdings, Inc. v. Lake,*
　48 F.4th 306 (5th Cir. 2022) ......................................................................... 5, 6, 10

*Norfolk S. Corp. v. Oberly,*
　822 F.2d 388 (3d Cir. 1987) ................................................................................. 5

*Regan v. City of Hammond,*
　934 F.3d 700 (7th Cir. 2019) ................................................................................. 6

*Tenn. Wine & Spirits Retailers Assoc. v. Thomas,*
　588 U.S. 504 (2019) .............................................................................................. 4

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.,*
　550 U.S. 330 (2007) .............................................................................................. 2

*Walgreen Co. v. Rullan*,
    405 F.3d 50 (1st Cir. 2005) ................................................................................. 5

## Statutes

16 U.S.C. § 824 ............................................................................................................ 7

16 U.S.C. § 824d .......................................................................................................... 3

16 U.S.C. § 824e .......................................................................................................... 9

16 U.S.C. § 825l ........................................................................................................... 9

Ind. Code § 8-1-2.3-1 ................................................................................................... 3

Ind. Code § 8-1-38-9 ............................................................................................ *passim*

## Other Authorities

MISO Tariff, Attachment FF ....................................................................................... 8

MISO, *MISO Board Approves Historic Transmission Plan* (Dec. 12, 2024) ............... 8

## INTRODUCTION

Plaintiffs-Appellees ("Plaintiffs") continue to misunderstand the Supreme Court's controlling decision in *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), and the core purpose and design of Indiana House Enrolled Act 1420 ("HEA 1420"). *Tracy* holds that for the dormant Commerce Clause to apply, the challenged law must distinguish between similarly situated entities. Here, HEA 1420 applies only to certain in-state or out-of-state incumbent utilities—owners of endpoint facilities—that are not similarly situated to in-state or out-of-state non-incumbents because these incumbents: own the endpoint facilities to which new projects will connect; are subject to differing regulatory oversight; and have differing regulatory responsibilities. But even if HEA 1420 did distinguish between similarly situated entities under *Tracy* (which it does not), Plaintiffs have no meaningful response to Intervenor-Defendants-Appellants' ("Intervenor Defendants") argument that Congress has authorized state rights of first refusal ("ROFRs"), rendering any dormant-Commerce-Clause-based concerns irrelevant.

Plaintiffs cannot rebut Intervenor Defendants' showing that equitable considerations strongly favor a stay. The Midcontinent Independent System Operator ("MISO") has now approved the Indiana projects at issue in accordance with HEA 1420. Any decision from this Court lifting its current administrative stay or declining to issue a stay pending appeal would cause needless confusion as to the status of these critical projects, potentially leading to collateral proceedings before MISO and then the Federal Energy Regulatory Commission ("FERC"). And in considering the

equities, Intervenor Defendants note that Plaintiffs do not attempt to respond to the argument that it was Plaintiffs who placed the courts, the parties, MISO, and FERC in this situation by inexplicably delaying the filing of their lawsuit and injunction request for over a year, until the eve of MISO's critical vote.

## ARGUMENT

### I. Intervenor Defendants Are Likely To Succeed On The Merits

A. Intervenor Defendants are likely to succeed on appeal because HEA 1420 does not violate the dormant Commerce Clause. Dkt.3 ("Mot.") at 9–16. To begin, there is no dormant-Commerce-Clause concern because non-incumbent utilities and incumbent utilities are not "similarly situated" under *Tracy*, 519 U.S. at 299. Mot.10–14; *see also United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 348 (2007) (Scalia, J., concurring in part). HEA 1420 is, at most, subject to *Pike* balancing, which the law easily satisfies, Mot.14–15, and Plaintiffs below did not even argue that the law fails under *Pike*, *see* R.58 at 23–24. Finally, even if HEA 1420 did potentially raise a dormant-Commerce-Clause concern, Congress has authorized States to enact ROFRs, thereby eliminating any such issue. Mot.16.

B. In their Opposition, Plaintiffs fail to show that incumbent and non-incumbent utilities are "similarly situated" under *Tracy*. *See* Dkt.8 ("Opp.") at 20–22. Unlike non-incumbents, Indiana's incumbents ***already own, operate, and maintain the existing endpoint facilities to which new interstate transmission facilities will connect***—the sole basis upon which HEA 1420 distinguishes between the two kinds of utilities at issue here. *See* Ind. Code § 8-1-38-9(a). An endpoint-facility owner offers

not just transmission, but transmission building off of an existing grid that the incumbent already owns, furthering grid reliability in a way that non-incumbents do not. *See* Dkt.3 at Ex.G ¶¶ 30–35, Ex.H ¶¶ 31–38, Ex.I ¶¶ 26–29, Ex.J ¶¶ 26–31. Further, incumbent utilities are subject to comprehensive regulatory oversight that non-incumbents are not subject to, including rate regulation and responsibility for providing vertically integrated service to exclusive areas in Indiana. *See* Ind. Code § 8-1-2.3-1. And unlike non-incumbents, these incumbents are statutorily obligated to ensure safe and reliable electric service throughout their *entire* territories, *see id.*, which they do by building and maintaining new projects in those territories. Non-incumbents do not serve retail customers or own state jurisdictional assets such as distribution lines, and so are only subject to FERC regulation for their transmission rates, *see* 16 U.S.C. § 824d(a)—which creates a different regulatory model for the electric-utility industry not endorsed by Indiana.

For much the same reasons, Plaintiffs are wrong to argue that HEA 1420 facially discriminates against out-of-state entities. HEA 1420 makes a facially neutral distinction "between existing electric transmission owners whose facilities will connect to a new line and all other entities, regardless of whether they are in-state or out-of-state," *LSP Trans. Holdings, LLC v. Sieben*, 954 F.3d 1018, 1027 (8th Cir. 2020), as part of Indiana's carefully crafted regulatory regime. Plaintiffs erroneously liken HEA 1420's incumbency requirement to an impermissible in-state-presence requirement. Opp.13–15. But HEA 1420 does not grant ROFRs based on an entity's physical location; rather, it extends ROFRs to the utilities that already own,

operate, and maintain the existing facility to which a new project will connect. That is why a utility that is an incumbent under HEA 1420 as to some projects has no ROFR as to projects connecting to Indiana facilities that it does not already own—despite its physical presence in Indiana. *See* Ind. Code § 8-1-38-9(a). So, while all incumbents are physically present in Indiana—that is, they own existing endpoint facilities within the State—HEA 1420 does not "discriminat[e] based on the extent of local operations." *See Lewis v. BT Inv. Managers, Inc.*, 447 U.S. 27, 42 n.9 (1980). Indeed, Plaintiff LSP Transmission Holdings' affiliate Republic Transmission, LLC, is an "incumbent" utility, so if a project were to connect to its facilities it too would have a ROFR under HEA 1420. *See* Opp.22.

The Supreme Court cases that Plaintiffs rely upon do not help them. Opp.14–15. In *Lewis*, the Court struck down a Florida law that prevented bank holding companies physically located outside Florida from owning an investment-advisory business within Florida. 447 U.S. at 37. In *Tennessee Wine & Spirits Retailers Association v. Thomas*, 588 U.S. 504 (2019), the Court invalidated a law that required individuals to reside in Tennessee for two years before they could start a new alcohol business within Tennessee. *Id.* at 510–11. And in *Dean Milk Co. v. City of Madison*, 340 U.S. 349 (1951), the Court struck down a law requiring that all milk be processed at an approved plant within a certain distance of the city square before that milk could be sold as pasteurized. *Id.* at 350. Unlike HEA 1420, the laws in each of these three cases distinguished between similarly situated entities based on their physical location. *See Lewis*, 447 U.S. at 37; *Tenn. Wine*, 588 U.S. at 510–11; *Dean Milk*, 340

U.S. at 350. HEA 1420, by contrast, makes a material and nondiscriminatory distinction between owners of endpoint facilities and all other utilities to promote the "health and safety considerations," *Tracy*, 519 U.S. at 309, associated with Indiana's traditional franchise model for utility regulation, *supra* pp.2–3.[1]

Plaintiffs cannot distinguish *Colon Health Centers of America, LLC v. Hazel*, 813 F.3d 145 (4th Cir. 2016), or *Norfolk Southern Corp. v. Oberly*, 822 F.2d 388 (3d Cir. 1987). *See* Opp.16–17. Plaintiffs argue that *Colon* involved a facially neutral statute, Opp.16, but the Fourth Circuit's determination that "incumbency is not the focus of the dormant Commerce Clause" means that statutes that distinguish based on incumbency are not discriminatory under the dormant Commerce Clause, *see* 813 F.3d at 154. The same goes for the Third Circuit's *Norfolk Southern* decision: like "[g]randfather clauses which distinguish between new and preexisting operations," state ROFRs that distinguish between endpoint-owners and all other entities do not offend the dormant Commerce Clause. 822 F.2d at 404.

Although Plaintiffs praise *NextEra Energy Capital Holdings, Inc. v. Lake*, 48 F.4th 306 (5th Cir. 2022), that decision conflicts with *Tracy* and other relevant precedent. The Fifth Circuit's holding—that "[w]hat is true for alcohol and milk under the dormant Commerce Clause must be true for electricity transmission," such that state ROFRs are unconstitutional under *Tennessee Wine* and *Dean*, *NextEra*, 48

---

[1] Plaintiffs cite *Florida Transportation Services Inc. v. Miami-Dade County*, 703 F.3d 1230 (11th Cir. 2012), and *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005), Opp.15, but neither "consider[s] state regulation of certain matters relevant to transmission planning and expansion," *LSP Trans.*, 954 F.3d at 1028 n.6.

F.4th at 325—fails to account for the fundamental ways that the utility industry differs from the alcohol or milk industries. *NextEra* discussed *Tracy*, but did not explain how incumbents and non-incumbents could possibly be similarly situated, where incumbents own the existing facilities to which new projects governed by HEA 1420 will attach and have distinct regulatory obligations associated with maintaining safe and reliable service within exclusive service areas. *See id.* at 319–20. Thus, while Plaintiffs denigrate the Eighth Circuit's *LSP Transmission* decision as an "outlier," Opp.3, 14, *NextEra* is the actual outlier.

Plaintiffs claim that HEA 1420 is like a "statute limiting commercial opportunities to companies that already employ Indiana workers or already pay Indiana taxes," Opp.15, but this analogy fails. HEA 1420 advances the policy that the entity that already owns, operates, and maintains an endpoint facility is the best entity to build new projects attaching to that facility. By contrast, statutes that limit commercial opportunities to companies that employ Indiana workers or pay Indiana taxes would impermissibly distinguish between similarly situated entities solely on the basis of their in-state connections—thus, they would not pursue significant "health and safety considerations," unlike HEA 1420. *See Tracy*, 519 U.S. at 309.

Plaintiffs argue that HEA 1420 triggers strict scrutiny because it "bear[s] more heavily on interstate than local commerce," Opp.17 (quoting *Regan v. City of Hammond*, 934 F.3d 700, 703 (7th Cir. 2019)), but that is incorrect. A law bearing more heavily on interstate commerce only triggers strict scrutiny if it "effectively operates as an embargo on interstate commerce." *Regan*, 934 F.3d at 703. HEA 1420

is not an "embargo" on interstate commerce. Rather, it regulates based on whether a company is or is not an incumbent endpoint-facility owner, not whether that company is an in-state or out-of-state entity. *See* Mot.12. Moreover, if an incumbent utility declines to exercise its ROFR under HEA 1420, "another entity" may construct the transmission facilities, with no requirement that this entity have any prior presence in Indiana. Ind. Code § 8-1-38-9(c). That any entity may compete to build, own, operate, and maintain a facility under HEA 1420 if the incumbent declines its ROFR further shows that HEA 1420 was not enacted for any discriminatory purpose, and instead simply reinforces Indiana's longstanding regulatory model.

Plaintiffs contend that the General Assembly enacted HEA 1420 "for the express purpose of protecting in-state firms against competition from out of state," relying upon a few remarks from legislators. Opp.19–20. This demonstrates that, at most, "some legislators sought to obtain votes for the measure on the basis of its beneficial side effects on state industry," which does not help Plaintiffs' case. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 463 n.7, 471 n.15 (1981).

Finally, and independently fatal to Plaintiffs' claim, Plaintiffs have no substantive response to Intervenor Defendants' argument that Congress authorized state ROFRs via the Federal Power Act ("FPA"). *See* Opp.22–23. They merely point to Section 824(b)(1) of the FPA, which gives the Federal Government jurisdiction over "the transmission of electric energy in interstate commerce." 16 U.S.C. § 824(b)(1). But pursuant to this provision, *States* retain authority to regulate the siting and construction of physical transmission infrastructure, *see New York v. FERC*, 535 U.S.

1, 24 (2002); *Ill. Com. Comm'n v. FERC*, 721 F.3d 764, 773 (7th Cir. 2013), which is what HEA 1420 addresses. And while FERC has partially done away with *federal* ROFRs, it has rejected a request to prohibit *state* ROFRs, explaining that these laws implicate "the traditional role of the States in regulating the siting and construction of transmission facilities." *MISO Trans. Owners v. FERC*, 819 F.3d 329, 336 (7th Cir. 2016) (citation omitted). FERC has also approved MISO's tariff, which requires MISO to comply with state ROFRs. MISO Tariff, Attachment FF, § VIII.A.1.[2] While Plaintiffs suggest that no court has concluded that the FPA "authorizes states to discriminate against interstate commerce," Opp.23, this Court in *Electric Power Supply Association v. Star*, 904 F.3d 518, 525 (7th Cir. 2018), explained that Section 824(b)(1) reflects Congress' authorization of "a state's regulation of electric capacity or a [certain] cross-subsidy" between energy generation under the dormant Commerce Clause.

## II. The Equitable Considerations Weigh In Favor Of A Stay

Following this Court's grant of an administrative stay, MISO proceeded with its voting on the Tranche 2.1 portfolio and approved its Indiana projects. *See* MISO, *MISO Board Approves Historic Transmission Plan* (Dec. 12, 2024).[3] MISO's action has ensured that these critical transmission projects will not be delayed, and that Indiana's energy infrastructure will not suffer the harmful vulnerabilities associated

---

[2] Available at https://www.misoenergy.org/globalassets/planning/mtep/attachment_ff_-_transmission_expansion_planning_protocol-2.pdf.

[3] Available at https://www.misoenergy.org/meet-miso/media-center/2024/miso-board-approves-historic-transmission-plan-to-strengthen-grid-reliability/.

with a patchwork electric grid (which are the very vulnerabilities that Indiana designed its exclusive franchise regime to prevent). Mot.17–20.

It therefore remains imperative that this Court continue the stay. If this Court were to lift the current administrative stay or decline to grant a stay pending appeal, that decision would return these critical projects to a state of uncertainty, jeopardizing grid reliability throughout the MISO region. *See* Mot.17–19. Although Plaintiffs have asserted that MISO will treat its designations as irrevocable once initially made, Opp.8—a position that would appear to make their preliminary-injunction request now moot—it is far from clear how MISO or Plaintiffs will react to an order lifting the stay, *accord* R.60 at 24–30. While Intervenor Defendants agree with MISO's position that the Tranche 2.1 projects have now been assigned correctly, Plaintiffs could conceivably seek relief from FERC under 16 U.S.C. § 824e if this Court were to lift the administrative stay, leading to lengthy administrative litigation followed by appeals to this Court or the D.C. Circuit, *see id.* § 825l. This would cast doubt on the status of these critical projects pending resolution of multiple proceedings on uncertain timelines.

Plaintiffs' assertions of injury do not outweigh the harms that would result absent a stay, *see* Opp.8–12, especially because it is Plaintiffs' delay—and only their delay—that has put the courts in this position. Plaintiffs waited well over a year to bring their challenge to HEA 1420 without offering any justification for their delay, injecting uncertainty into the regional-transmission-planning process. Had they timely brought their challenge to HEA 1420, their preliminary injunction motion

would in all likelihood have been fully litigated through an appeal before the critical MISO meeting last week. And while Plaintiffs claim that a stay pending appeal "would almost certainly 'raise[ ] prices in the interstate market,'" Opp.9 (quoting *NextEra*, 48 F.4th at 324 n.9), they provide no support for this proposition, merely citing FERC's generalized concern that ROFRs may result in rates "that are unjust and unreasonable," Opp.9 (quoting 136 FERC ¶ 61,051). By contrast, recent studies note that the "data and accompanying analysis fail to support the idea that competition invariably leads to 'cost savings' in the transmission sector, or that such savings should be expected on a systematic basis." R.45 (citing studies). Plaintiffs also ignore the fact that HEA 1420 itself imposes a competitive-bidding requirement on incumbent transmission owners as they complete approved projects. Ind. Code § 8-1-38-9(e). Finally, Plaintiffs rely heavily on their own economic interests, but these interests do not supersede the public's interest in ensuring that HEA 1420—which is part and parcel of Indiana's traditional regulatory scheme, addressing "health and safety considerations" and ensuring safe and reliable electric grid, *see Tracy*, 519 U.S. at 309—remains in effect pending resolution of this appeal.

## CONCLUSION

This Court should grant Intervenor Defendants' Emergency Motion For Stay Pending Appeal.

Dated: December 16, 2024

Respectfully submitted,

| | |
|---|---|
| William R. Derasmo<br>Troutman Pepper<br>Hamilton Sanders LLP<br>401 9th Street, N.W.<br>Suite 1000<br>Washington, D.C. 20004<br>(202) 274.2886<br>william.derasmo@troutman.com | */s/ Misha Tseytlin*<br>Misha Tseytlin<br>*Counsel of Record*<br>Kevin M. LeRoy<br>Kaitlin L. O'Donnell<br>Sierra C. Stockley<br>Troutman Pepper<br>Hamilton Sanders LLP<br>227 W. Monroe, Suite 3900<br>Chicago, Illinois 60606<br>(608) 999-1240 (MT)<br>(312) 759-1938 (KL)<br>(302) 777-6541 (KO)<br>(215) 981-4692 (SS)<br>misha.tseytlin@troutman.com<br>kevin.leroy@troutman.com<br>kaitlin.o'donnell@troutman.com<br>sierra.stockley@troutman.com<br><br>*Attorneys for the Northern Indiana Public Service Company, Indianapolis Power & Light Company d/b/a AES Indiana, Southern Indiana Gas and Electric Company d/b/a CenterPoint Energy Indiana South, and Duke Energy Indiana, LLC* |

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,593 words. This filing also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because it was prepared using Microsoft Word 2016 in Century Schoolbook 12-point font, a proportionally spaced typeface.

Dated: December 16, 2024

/s/ *Misha Tseytlin*
MISHA TSEYTLIN

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2024, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

    Dated: December 16, 2024

    /s/ *Misha Tseytlin*
    MISHA TSEYTLIN