**Nos. 24-3248 & 24-3249**

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

———————————

LSP TRANSMISSION HOLDINGS II, LLC, *et al.*,

*Plaintiffs-Appellees*,

v.

JAMES F. HUSTON, Chairman, Indiana Utility Regulatory Commission, *et al.*,

*Defendants-Appellants*,

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, *et al.*,

*Intervenor Defendants-Appellants.*

———————————

On Appeal from the United States District Court for the
Southern District of Indiana

———————————

## REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION
## OF ORDER GRANTING A STAY PENDING APPEAL

———————————

TODD A. RICHARDSON
JAMES E. ZOCCOLA
THOMAS JONES
LEWIS KAPPES
One American Square
Suite 2500
Indianapolis, IN 46282
(317) 639-1210
trichardson@lewis-kappes.com

PAUL D. CLEMENT
ERIN E. MURPHY
 *Counsel of Record*
MATTHEW D. ROWEN
JOSEPH J. DEMOTT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
erin.murphy@clementmurphy.com

*Counsel for Plaintiffs-Appellees*

January 10, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................ ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 3

I.     Appellees Have Standing............................................................... 3

II.    The Equities Tilt Heavily In Favor Of Lifting The Stay ................................. 8

      A.    Leaving the Stay in Place Exposes Appellees to an Imminent Threat of Irreparable Harm ................................................................. 8

      B.    Lifting the Stay Would Not Expose Appellants to Any Risk of Irreparable Harm ...................................................................11

CONCLUSION ...................................................................................... 12

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*All. for Clean Coal v. Miller,*
    44 F.3d 591 (7th Cir. 1995)..................................................................3

*Bennett v. Spear,*
    520 U.S. 154 (1997)............................................................ 6, 7, 8

*Del. State Sportsmen's Ass'n, Inc.*
    *v. Del. Dep't of Safety & Homeland Sec.,*
    108 F.4th 194 (3d Cir. 2024)...............................................................1

*Dep't of Commerce v. New York,*
    588 U.S. 752 (2019)..............................................................1, 5

*Haaland v. Brackeen,*
    599 U.S. 255 (2023)..............................................................6, 7

*K.C. v. Individual Members of Med. Licensing Bd. of Ind.,*
    121 F.4th 604 (7th Cir. 2024).............................................................4

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)..........................................................................3

*Mangual v. Rotger-Sabat,*
    317 F.3d 45 (1st Cir. 2003) .............................................................3

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*
    968 F.3d 738 (9th Cir. 2020)..........................................................7, 8

*Taylor v. Salvation Army Nat'l Corp.,*
    110 F.4th 1017 (7th Cir. 2024)............................................................5

*United States v. King County,*
    122 F.4th 740 (9th Cir. 2024).............................................................5

**Statutes**

Ind. Code §8-1-2-4......................................................................4

Ind. Code §8-1-2-34.5..................................................................4

Ind. Code §8-1-2-42.5 ................................................................................4

Ind. Code §8-1-2-51 ...................................................................................4

Ind. Code §8-1-2-54 ...................................................................................4

Ind. Code §8-1-2-68 ...................................................................................4

Ind. Code §8-1-2-69 ...................................................................................4

Ind. Code §8-1-2-115 ..............................................................................3, 4

Ind. Code §8-1-38-9 ...................................................................................4

**Regulations**

170 Ind. Admin. Code 4-1-2 .......................................................................4

170 Ind. Admin. Code 4-1-23 .....................................................................4

170 Ind. Admin. Code 4-1-24 .....................................................................4

**Other Authorities**

MISO, FERC Electric Tariff, Attachment FF, §VIII,
    https://tinyurl.com/mr2ha47c ........................................................ *passim*

MISO, FERC Electric Tariff, Module A, §II.1.A,
    https://tinyurl.com/mr2ha47c .......................................................................5

## INTRODUCTION

Appellants' opposition is notable less for what it says than for what it does not say. Appellants do not deny that, unless the stay is lifted, MISO will take what it views as irrevocable action—assigning incumbents the interstate transmission projects at issue here, which encompass 70 separate Indiana facilities collectively worth over $1 billion—no later than January 13. Appellants likewise do not deny that, if MISO takes that step, it could moot this appeal; in fact, they *affirmatively argue that it would*. Dkt.45.at.51 & n.12. Nor do Appellants deny that Appellees will be irreparably harmed if they lose the opportunity to compete for this massive tranche of interstate transmission projects. Under longstanding equitable principles, those are "compelling reason[s]" to lift the stay; indeed, by Appellants' telling, *not* lifting the stay would defeat this Court's "ability to render a meaningful judgment on the merits." *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201 (3d Cir. 2024).

What Appellants do say provides no reason to maintain the stay. Their lead argument—Article III standing—falls flat. Appellees' theory of standing "does not rest on mere speculation about the decisions of third parties; it relies instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019). Commissioners are the proper defendants, as they are the state officials who enforce HEA1420. And their

enforcement of HEA1420 has a straightforward effect on MISO, as MISO is legally obligated to "comply with" HEA1420 if it is enforceable when MISO assigns the relevant projects but must open them to competition if it is not. MISO, FERC Electric Tariff, Attachment FF, §VIII.A, A.1, https://tinyurl.com/mr2ha47c ("Tariff"). Indeed, if Appellants did not think the injunction would impact MISO, they would not have asked this Court for a stay in the first place, and they would not continue to defend that stay so vigorously now.

Appellants' backup argument—that there have been no new developments since the stay issued—is just false. As of December 18, the Court had good reason to expect that MISO would hold off on assigning the projects if the Court resolved the case "in a matter of weeks." Dkt.27.at.2. But MISO has now made clear that it believes itself *legally required* to assign the new projects to incumbents by January 13 if the stay remains in place. And, according to Appellants, that assignment would irreparably harm Appellees and deprive the Court of jurisdiction over this appeal. Conversely, Appellants offer zero reason to think *they* would suffer irreparable harm if the stay were lifted for the short time it takes the Court to resolve this highly expedited appeal. Nor could they, as Appellees have conceded that MISO could halt the competitive process if the injunction is ultimately vacated so long as no bid has been accepted, which would not occur for many months. All equities thus point the same way: The Court should lift the stay.

## I.   Appellees Have Standing.

Article III requires Appellees to show an "injury in fact" that is "fairly traceable" to HEA1420 and "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (alterations omitted).  It is undisputed that a deprivation of the "right[] to compete on an equal footing in interstate commerce" constitutes injury in fact.  *All. for Clean Coal v. Miller*, 44 F.3d 591, 594 (7th Cir. 1995).  Appellees readily satisfy traceability and redressability as well.[1]

1. "[W]hen a statute is challenged as unconstitutional, the proper defendants are the government officials whose role it is to administer and enforce it." *Mangual v. Rotger-Sabat*, 317 F.3d 45, 57 (1st Cir. 2003).   Here, those officials are Commissioners, whom Indiana law expressly authorizes "to enforce" HEA1420. Ind. Code §8-1-2-115.

Far from "merely docketing" incumbents' initial notices of intent to exercise a right of first refusal, Resp.10, Commissioners give effect to HEA1420 in myriad ways.  In addition to the initial notices, they receive reports regarding each project being performed under HEA1420, including estimated costs and the rate formula.

---

[1] Notably, none of the courts that have heard similar suits has identified any jurisdictional defect.  *See* Dist.Ct.Dkt.58.at.8 (citing cases).

*Id.* §8-1-38-9(c)-(d).   Armed with that information and their broad enforcement authority, *id.* §8-1-2-115, Commissioners have the power to resolve disputes relating to HEA1420, e.g., to what existing facilities a new project must "connect[]" to trigger rights of first refusal, *id.* §8-1-38-9(a), which of multiple entities may exercise a right of first refusal, *id.* §8-1-38-9(b), and whether an incumbent has complied with the subcontracting requirements of §8-1-38-9(e).   Moreover, when incumbents exercise a right of first refusal, they are subject to Commission regulation and must meet the Commission's service-quality standards.   *See id.* §§8-1-2-4, -34.5, -42.5, -51, -54, -68, -69; 170 Ind. Admin. Code 4-1-2, -23, -24.   The Commission's role in enforcing HEA1420 thus extends from the initial notice all the way to establishing regulated rates that ensure the incumbent recovers associated costs from Indiana consumers.

By contrast, MISO is a nongovernmental organization with no authority to *enforce* HEA1420; it instead has an obligation to "*comply* with" HEA1420.   Tariff, Attachment FF, §VIII.A.1 (emphasis added).   Appellants cite no authority—and Appellees are aware of none—suggesting that litigants seeking to challenge an unconstitutional statute must sue nongovernmental actors whose *compliance* with that statute plays a role in their injury.   *Cf., e.g., K.C. v. Individual Members of Med. Licensing Bd. of Ind.*, 121 F.4th 604, 612 (7th Cir. 2024) (individuals challenged statutory ban on certain medical treatments by suing state officials, not doctors

obligated to comply with the ban); *United States v. King County*, 122 F.4th 740, 751-52 (9th Cir. 2024) (federal government sued top official of county that enacted unconstitutional restriction on servicing ICE aircraft, not companies that stopped servicing aircraft in compliance with the restriction).

Appellees need not show that Commissioners' enforcement of HEA1420 is "the most immediate cause, or even a proximate cause, of [their] injuries." *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1025 (7th Cir. 2024). "Article III requires no more than a 'meaningful connection' between the two," *id.* (brackets omitted), so traceability is satisfied by a "showing that third parties will likely react in predictable ways" to impending government action, *Dep't of Commerce*, 588 U.S. at 768.

That test is amply satisfied here. MISO is obligated to "comply with" any right-of-first-refusal laws that are enforceable when it "assign[s]" the Tranche 2.1 projects. Tariff, Attachment FF, §VIII.A.1; *see* Tariff, Module A, §II.1.A (defining "Applicable Laws and Regulations"); Dist.Ct.Dkt.58-1.at.18-21. If HEA1420 is not in force, MISO must assign the projects through its "Competitive Developer Selection Process." Tariff, Attachment FF, §VIII.A. HEA1420 is thus a but-for cause of Appellees' inability to compete for Indiana projects in Tranche 2.1, which more than suffices for standing. *See Dep't of Commerce*, 588 U.S. at 768.

Appellants claim that Appellees' injury is "'fairly traceable' *only* to MISO's actions," "rather than [Commissioners'] actions." Resp.9 (emphasis added). That argument "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Commissioners' enforcement of HEA1420 is the *de facto* cause of Appellees' injury: If they were enjoined from enforcing it, then Appellees could compete for the relevant projects.

2. For similar reasons, redressability is satisfied. As explained, MISO must "comply with" HEA1420 and any related court orders. *Supra* pp.4-5. Absent an enforceable right-of-first-refusal law (or other exception), MISO must open the 70 Indiana facilities in Tranche 2.1 to competition. Tariff, Attachment FF, §VIII.A; *see* Dkt.26.at.Ex.A. It is thus highly likely that, if Appellees prevail in this litigation, they will be able to compete for MISO-approved projects in Indiana—unless all of them are assigned to incumbents in the interim.

Appellants' counterarguments rest on the false premise that MISO has discretion to "choose to abide by"—or disregard—"an injunction against [Commissioners]." Dkt.45.at.22; *see* Resp.9, 13, 17. To be sure, Article III courts cannot issue "advisory opinions" that seek only to "persuade" nonparties to voluntarily do something they have no obligation to do. *Haaland v. Brackeen*, 599 U.S. 255, 293-94 (2023). But courts may provide redress by enjoining government

action that "produce[s] injury through [its] 'determinative or coercive effect upon the action of someone else.'" *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (9th Cir. 2020) (quoting *Bennett*, 520 U.S. at 169). That is precisely the situation here:  If enforcement of HEA1420 is enjoined, then MISO is *required*, as a matter of federal law, to disregard HEA1420 when assigning new projects.  Tariff, Attachment FF, §VIII.A, A.1.  Appellants' contrary argument is impossible to square with their own actions:  If they really thought enjoining HEA1420 would have no impact on MISO, then they would not have run into court seeking to stay the preliminary injunction the night before MISO's December 12 board meeting.

Appellants insist that redressability exists only where "*the named defendant* can[] remedy the plaintiff's claimed injury."  Resp.9 (emphasis added).  In fact, the correct question is whether "*the court* [is] able to afford relief through the exercise of its power."  *Haaland*, 599 U.S. at 294 (emphasis altered).  And courts can do so by removing legal obligations that compel third parties to act.  Indeed, courts have found redressability even when (unlike here) third parties have no obligation to act, but rather are just *likely* to act a particular way if relief is granted.  In *Skyline Wesleyan*, for example, a church sued the agency responsible for regulating California's health insurance marketplace, challenging its refusal to approve employee health plans that did not cover abortion.  968 F.3d at 742.  The district

court held that the alleged injury was not redressable because alleviating it "would require action by a non-party health care insurer in the form of furnishing [the church] with a plan containing the exemption it desires." *Id.* at 746 (alterations omitted). But the Ninth Circuit reversed, finding it "likely" that if the agency's rule were enjoined, "at least one insurer would be willing to sell [the church] a plan that accords with its religious beliefs." *Id.* at 749-50. Similarly, in *Bennett*, the Court found that an order invalidating a biological opinion by the Fish and Wildlife Service would "likely" provide redress by leading a nonparty to lift injurious water-level restrictions—even though the nonparty was technically free to leave the restrictions in place. 520 U.S. at 168-71. This case follows *a fortiori*, as MISO is *legally obligated* (under its FERC-approved tariff) to open the disputed projects to competition if HEA1420 is unenforceable. Accordingly, Appellees have standing.

## II. The Equities Tilt Heavily In Favor Of Lifting The Stay.

### A. Leaving the Stay in Place Exposes Appellees to an Imminent Threat of Irreparable Harm.

This Court's stay order rests on the premise that no party will suffer irreparable harm if the case is briefed and argued by January 27. Dkt.27.at.2. But subsequent developments conclusively demonstrate that Appellees are at grave risk of suffering irreparable harm by January 13.

MISO has now made clear that if HEA1420 remains in force on that date, it believes itself legally obligated to assign incumbents all the projects at issue. Mot.9-

12. MISO and Appellants maintain that such an assignment would be irrevocable; indeed, Appellants contend that it would "moot" Appellees' request for injunctive relief, and hence this appeal.[2]  Dkt.45.at.51 & n.12; *see* Dist.Ct.Dkt.58-1.at.18-21. And no one disputes that Appellees will be irreparably harmed if they are deprived of the opportunity to compete.  *See* Mot.14-15.

Remarkably, Appellants claim that the Court *should* allow this irreparable harm to occur, and allow the appeal to become (in their view) moot in the middle of the Court's expedited briefing schedule.  Resp.11-14.  In fact, they insist that "no new developments or facts … have arisen since this Court issued its stay order," Resp.11, and that this Court therefore must have *always* intended that order to moot this appeal.  That is not remotely accurate.

Based on the limited facts available when it entered that order, the Court had ample reason to believe that "[n]o party" would suffer irreparable harm if it resolved the appeal on a highly expedited basis.  Dkt.27.at.2.  Although the parties expected MISO to make a potentially irrevocable assignment of the projects at its December 12 board meeting, *see* Dkt.3.at.3; Dkt.8.at.2, that did not happen.  And both sides suggested that MISO could—and likely would—hold off on assigning the relevant Indiana projects if this Court were to resolve the appeal expeditiously.  *See, e.g.*,

---

[2] To be clear, Appellees disagree.  *See* Mot.16.

Oral.Arg.Audio 30:47-31:15; Dkt.3.at.18. MISO's views were not clear, however; and given the compressed timeline, "[no]body asked MISO." Oral.Arg.Audio 38:33-37.

But after MISO issued further information one day after argument, Appellees *did* ask MISO if it would "retain[] the flexibility to make an assignment of the Indiana projects in Tranche 2.1 in a manner consistent with whatever decision the Seventh Circuit ultimately renders regarding the injunction within the coming weeks." Dkt.40-2 ¶4 & Ex.2. And MISO responded by informing Appellees that, if the stay remains in place, it believes that it will be *legally obligated* to assign the projects to incumbents no later than January 13, 2025. Dkt.40-2 ¶6 & Ex.3. That is vital information that was not before the Court when it issued the stay. Indeed, if this Court had known that the projects would be assigned to incumbents on January 13, then it would have made scant sense to set a schedule under which this appeal will not be resolved until February.

Appellants ignore Appellees' communications with MISO from December 19-27, instead advancing a false narrative that Appellees' motion was based solely on MISO's public announcement of December 19. *See* Resp.11-14. But the ostrich defense cannot prevail: It is now beyond dispute (and indeed nowhere disputed) that a fundamental premise of this Court's stay order—that Appellees face no imminent risk of irreparable harm before January 27—was unfortunately incorrect.

**B.** **Lifting the Stay Would Not Expose Appellants to Any Risk of Irreparable Harm.**

Appellants, by contrast, face no realistic prospect of harm during the limited period needed to complete this expedited appeal. It is absurd to claim that lifting the stay would harm grid reliability or "delay[] the completion" of the relevant projects, Resp.18, since none is slated for completion until *June 2032*, Mot.20. And Appellants identify no reason to think MISO would treat a decision to open the projects to competitive bidding as irrevocable—a position that Appellees have not advanced. *Contra* Resp.18. MISO's tariff provides that it must "comply with" right-of-first-refusal laws when "*assign*[*ing*]" new projects. Tariff, Attachment FF, §VIII.A.1. All parties have accordingly agreed that if MISO merely initiates the competitive-bidding process (by setting a date for issuance of RFPs), that *non-assignment* would *not* foreclose MISO from subsequently assigning the projects to incumbents under HEA1420. *See* Dkt.3.at.18-19; Dkt.8.at.9; Dkt.20.at.12; *accord* Dist.Ct.Op.21. Appellants offer zero evidence suggesting that MISO disagrees—which is presumably why they instead advanced meritless arguments about potential "confusion" and "delays" in their stay briefing and at oral argument. *See* Dkt.3.at.18-20; Dkt.19.at.1-2; Oral.Arg.Audio 6:03-53, 8:07-49, 1:05:56-1:06:28, 1:07:41-1:08:00.

In sum, Appellees undisputedly face an imminent threat of irreparable harm if the stay remains in place, while Appellants face no meaningful threat of harm if it is

lifted. And Appellants contend that this appeal will become moot if the stay remains

in place through Monday. The equities thus strongly support lifting the stay before

the end of the day today.

**CONCLUSION**

Appellees' motion should be granted.

Respectfully submitted,

s/Erin E. Murphy

|  |  |
|---|---|
| TODD A. RICHARDSON | PAUL D. CLEMENT |
| JAMES E. ZOCCOLA | ERIN E. MURPHY |
| THOMAS JONES | *Counsel of Record* |
| LEWIS KAPPES | MATTHEW D. ROWEN |
| One American Square | JOSEPH J. DEMOTT |
| Suite 2500 | CLEMENT & MURPHY, PLLC |
| Indianapolis, IN 46282 | 706 Duke Street |
| (317) 639-1210 | Alexandria, VA 22314 |
| trichardson@lewis-kappes.com | (202) 742-8900 |
|  | erin.murphy@clementmurphy.com |

*Counsel for Plaintiffs-Appellees*

January 10, 2025

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATION**

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(1)(E)(2) because it contains 2,595 words, excluding the parts of the brief exempted from the word count by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because the Brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

January 10, 2025

s/Erin E. Murphy
Erin E. Murphy

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/Erin E. Murphy
Erin E. Murphy
