# UNITED STATES OF AMERICA
## BEFORE THE
## FEDERAL ENERGY REGULATORY COMMISSION

| | | |
|---|---|---|
| **LSP TRANSMISSION HOLDINGS II, LLC, LS POWER MIDCONTINENT, LLC, CENTRAL TRANSMISSION, LLC, and LS POWER GRID DRS HOLDINGS, LLC** | ) ) ) ) ) ) ) | |
| **Complainants** | ) ) | **Docket No. EL25-___-000** |
| **v.** | ) ) | |
| **MIDCONTINENT INDEPENDENT SYSTEM OPERATOR, INC.** | ) ) | |
| **Respondent** | | |

## COMPLAINT REQUESTING FAST TRACK PROCESSING AND MOTION REQUESTING SHORTENED ANSWER PERIOD

Pursuant to Sections 206, 306 and 309 of the Federal Power Act ("FPA")[1]

and Rule 206 of the Rules of Practice and Procedure of the Federal Energy

Regulatory Commission ("Commission"),[2] this Complaint demonstrates that

Midcontinent Independent System Operator, Inc. ("MISO")[3] has violated its Open

---

[1]      16 U.S.C. §§ 824e, 825e, and 825h.

[2]      18 C.F.R. § 385.206.

[3]      As referenced herein, MISO refers to the legal operating entity, as managed by its employees and staff.  When referring to the MISO Board, the Complaint will refer specifically to the MISO Board.  MISO's Tariff specifies actions that may be taken by MISO and other actions that must be taken by the MISO Board.

Access Transmission, Energy, and Operating Reserve Markets Tariff ("Tariff"). MISO violated the Tariff by treating an Indiana incumbent preference law—House Enrolled Act 1420 ("HEA 1420")—as an "Applicable Law[]" even though the United States District Court for the Southern District of Indiana had preliminarily enjoined its enforcement. MISO acknowledges that HEA 1420 would no longer be "applicable" once a court has *permanently* enjoined its enforcement, yet MISO insists that a *preliminary* injunction does not affect HEA 1420's applicability.[4] That reading of the Tariff defies the plain meaning of "applicable" as well as the well-settled rule that "a preliminary injunction has all of the force of a permanent injunction during its period of effectiveness." Wright & Miller, 11A *Federal Practice & Procedure* §2947 (updated June 2024). The Commission should instruct MISO that a state incumbent preference law is no longer "[a]pplicable" when a federal court has enjoined its enforcement—regardless of whether the injunction is preliminary or permanent.

It is important to note that resolution of this Complaint does not require the Commission to address the validity of so-called rights of first refusal laws, interpret the dormant Commerce Clause, or weigh in on the appropriateness of injunctive relief. It instead calls on the Commission to construe the extent of

---

[4] *See* Brief for *Amicus Curiae* MISO, Inc. ("*Amicus* Brief"), No. 24-3248 (7th Cir. Jan. 22, 2025), Dkt.81 at 4, 17-18 & n.11, attached as Attachment 1.

MISO's obligation to comply with "Applicable Laws and Regulations" under Attachment FF, §VIII.A and Module A of its Tariff.  Moreover, MISO's position that a law or regulation remains "applicable" even when it is the object of a preliminary injunction would create chaos across MISO's Tariff wherever "Applicable Laws and Regulations" are referenced, including its Generator Interconnection Procedures and Designated Entity Agreement.  After all, consistency of Tariff application requires that MISO approach the impact of preliminary injunctions the same across all Tariff references to Applicable Laws and Regulations, not solely state incumbent preference laws.

Complainants LSP Transmission Holdings II, LLC, LS Power Midcontinent, LLC, Central Transmission, LLC, and LS Power Grid DRS Holdings, LLC (collectively, "LS Power" or "Complainants") are directly and substantially harmed by MISO's Tariff violation because MISO relied on its view that it could ignore the Preliminary Injunction to exclude over $1 billion in proposed transmission additions in Indiana from the Tariff's required Competitive Transmission Process. MISO does not appear to have assigned the relevant Indiana projects yet, and, to the extent MISO claims to have assigned the projects on or after January 13, 2025, the assignment was invalid because the Preliminary Injunction was in force. Moreover, even if MISO were to assert that it "assigned" the projects between December 12, 2024 and January 12, 2025, when the Preliminary Injunction was

briefly stayed—something MISO did not assert in its *Amicus* Brief—any such assignment would have violated the Tariff requirement that the MISO Board (as opposed to MISO staff) approve the designation of the transmission owner that is entitled to construct and own each project excluded from the Competitive Transmission Process.  The MISO Board has provided no such approval with respect to the Indiana projects at issue here.

Complainants respectfully request that the Commission issue an order, by the earlier of 20 days of MISO's Answer or by March 11, 2025 (the start of the next MISO Board meeting), instructing MISO that the Preliminary Injunction precludes MISO from treating HEA 1420 as an "Applicable Law[] … granting a right of first refusal," Tariff, Attachment FF, §VIII.A.1, and that the Tariff therefore requires use of the Competitive Transmission Process for all LRTP Tranche 2.1 projects located in Indiana, unless properly excluded by another exclusion. Further, to the extent that MISO claims that its employees and staff assigned the Tranche 2.1 projects in Indiana on a date when the Preliminary Injunction was stayed, Complainants urge the Commission to hold that any such assignment violated the Tariff, as the Tariff mandates that the MISO Board approve the designation of all project developers that are not competitively selected.

4

## I.  REQUEST FOR FAST TRACK PROCESSING AND EXPEDITED MISO ANSWER

### A.  Fast-Track Processing Is Appropriate

Pursuant to Rule 206 of the Commission's Rules of Practice and Procedure,[5] Complainants request Fast Track Processing of this complaint.  At its core the Complaint is a simple Tariff interpretation analysis of the MISO Tariff in two regards, neither of which involve issues of fact.  The initial question is whether a state incumbent preference law remains an "Applicable Law[]" within the meaning of MISO's Tariff even after a federal court has preliminarily enjoined enforcement of that state law.[6]  This initial question can be resolved under the plain meaning of "Applicable Laws and Regulations," a defined term that appears throughout MISO's Tariff and that requires a single, consistent application.  "A tariff provision must be understood according to its plain meaning, which we draw from its text and context."[7]  MISO's position that only a permanent injunction—not a preliminary injunction—renders a law "[ina]pplicable" is flatly wrong and would

---

[5]    18 C.F.R. § 385.206.

[6]    MISO Module A, Common Tariff Provisions, available at https://www.misoenergy.org/legal/rules-manuals-and-agreements/tariff/, last accessed on February 4, 2025.

[7]    *Okla. Gas & Elec. Co. v. FERC*, 11 F.4th 821, 827 (D.C. Cir. 2021), citing *Ameren Servs. Co. v. FERC*, 330 F.3d 494, 499, 356 U.S. App. D.C. 230 (D.C. Cir. 2003); *Monterey MA, LLC v. PJM Interconnection LLC*, 165 FERC ¶ 61,201, at P 45 (2018) *quoting Penn Cent. Co. v. General Mills, Inc.*, 439 F.2d 1338, 1341 (8th Cir. 1971) ("[T]ariffs must have a reasonable construction and should be interpreted in such a way as to avoid unfair, unusual, absurd or improbable results.")

cause chaos if applied across all Tariff references to "Applicable Laws." Prompt resolution of the meaning of "Applicable Laws and Regulations" is essential to ensure that the various provisions of the Tariff that use that term are applied correctly and consistently.

With respect to this particular dispute, expedited treatment is important both to maintain the integrity of MISO's planning process, including the assignment of Indiana projects in LRTP Tranche 2.1, and because there is ongoing litigation over HEA 1420 that is proceeding on an expedited basis. On January 13, 2025, MISO identified the schedule of RFPs for LRTP Tranche 2.1 transmission projects. MISO just released its first competitive RFP, an RFP for the Kentucky portion of LRTP Tranche 2.1 Project 35.[8] MISO has excluded the Indiana portions of LRTP Tranche 2.1 Project 35 from competition, preventing transmission ratepayers across MISO from benefiting from the potential efficiencies of a single developer addressing the entire set of new 345 kV facilities. For those transmission additions that MISO did not list as competitive, such as those in Indiana, once MISO assigns the projects, whether properly or not, MISO expects immediate development

---

[8]    https://www.misoenergy.org/planning/competitive-transmission-administration/#nt=%2Fctadoctype%3ACurrent%20Projects%2Fctaprojectname%3AMTEP24%20RIKY%20(Reid%20EHV%20-%20Indiana%2F%2FKentucky%20State%20Line)&t=10&p=0&s=Updated&sd=desc, last accessed February 4, 2025.

activities to begin.[9]  Incumbent transmission owners have indicated that they plan to move quickly to advance the projects excluded from competition, which will result in spending ratepayer money while confusing landowners and others in the path of these largely greenfield additions if the projects are ultimately declared competitive.

To the extent that MISO's response to this Complaint may raise a second issue—whether MISO staff or employees may assign non-competitive projects to specific developers without Board approval—expedited review of that issue is also warranted.  On January 13, 2025, MISO sent a stakeholder update indicating that the LRTP Tranche 2.1 projects that MISO has determined are not subject to competition will be assigned without Board approval.  And, in its *Amicus* Brief of January 22, MISO suggests that its staff and employees have already assigned the Tranche 2.1 projects in Indiana to incumbent transmission owners.[10]  To the extent MISO claims that the projects were assigned between December 12 and January 12, the Commission should promptly resolve whether, under the explicit terms of the MISO Tariff, the MISO Board is required to approve designation of the incumbent transmission owner that will construct and own a non-competitive

---

[9]     *Amicus* Brief at 10 ("No matter how a project is assigned, the recipient of the Project is obligated immediately to begin working in good faith to meet the established project in-service date.")

[10]    *Id*. at 20.

transmission project. This issue should be resolved before MISO or incumbent Indiana transmission owners proceed any further with Tranche 2.1 projects that may not have been validly assigned.

Expedited review is also appropriate because, at the request of incumbent Indiana transmission owners, the United States Court of Appeals for the Seventh Circuit has been undertaking an expedited review of the Preliminary Injunction. Highly expedited briefing took place in late December and early-to-mid January; oral argument was held on January 27, 2025; and the Court has indicated that it expects to rule "in a matter of weeks."[11] Moreover, while the Seventh Circuit is reviewing whether the district court was correct to issue a Preliminary Injunction, the District Court litigation is also proceeding apace. On February 3, 2025, the parties submitted their case-management report, in which Plaintiffs proposed that dispositive motions be filed no more than 28 days after the Seventh Circuit issues its forthcoming decision. The Commission's resolution of the Tariff-interpretation issues presented here may directly impact the Seventh Circuit's analysis and the District Court proceedings.

---

[11]    Order, *LSP Transmission Holdings II, LLC, et al., v James F. Huston, Chairman, Indiana Utility Regulatory Commission, et al.*, Dkt. 27 issued December 18, 2024 in Case Nos. 24-3248 & 24-3249 by the United States Court of Appeals for the Seventh Circuit, at 2, attached as Attachment 2. On the same day the Court issued a separate order requesting highly expedited briefing and setting an oral argument for January 27, 2025.

The Commission has stated that

> An initial decision on a complaint assigned to Fast Track
> processing could be expected in significantly less time
> than the 60 days generally contemplated for complaints
> not directed to the Fast Track process. . . . For cases
> resolved based on the pleadings, it is expected that the
> Commission could issue an order on the merits within 20
> days after the answer is filed.[12]

Because this matter does not involve factual disputes but rather Commission interpretation of specific Tariff language, and Respondent (MISO) has fully articulated the basis for its challenged interpretation of that language in its *Amicus* Brief to the Seventh Circuit, Complainants request an order on the merits by the earlier of 20 days of MISO's Answer or March 11, 2025, the start of the next MISO Board meeting. That timeline is warranted not only by the nature of the issues presented, but also because MISO has had several weeks' notice of LSP's intent to challenge its interpretation of the Tariff, as well as an opportunity to brief these issues in the Seventh Circuit.[13]

---

[12]    https://www.ferc.gov/fast-track-procedures.

[13]    *See* Appellees' Brief, No. 24-3248 (7th Cir. Jan. 17, 2025), Dkt.68 at 20; Motion for Reconsideration of Order Granting a Stay Pending Appeal, No. 24-3248 (7th Cir. Dec. 30, 2024), Dkt. 40-1 at 16.

**B.    Motion For Shortened Period For MISO Answer To The Complaint And Shortened Response To This Motion**

Pursuant to Rules 206(f) and 212 of the Commission's Rules of Practice and Procedures,[14] Complainants also move the Commission to require MISO to answer the Complaint on an expedited basis, within 7 days of the filing of the Complaint. To ensure timely adjudication of this Motion, Complainants request a shortened answer period of three (3) days to the Motion.

MISO is acutely aware of the Tariff issues raised in the Complaint and outlined its position on the definition of "Applicable Laws and Regulations" in the *Amicus* Brief it recently filed with the Seventh Circuit.[15]  MISO applied the Tariff in the manner it has and does not need an extended answer period, or even the traditional answer period, to explain the basis for its conclusion that the existence of a preliminary injunction does not affect whether a state incumbent preference law is "applicable" within the meaning of its Tariff.  Further, Indiana incumbent transmission owners seeking to benefit from the projects without participating in competition intervened in the District Court proceeding, initiated the Seventh

---

[14]    18 C.F.R. §§ 385.206, 212.

[15]    *Amicus* Brief at 23 (noting that: "FERC Is The Proper Forum For Any Challenge To MISO's Interpretation Or Implementation Of Its Tariff).

Circuit review, and are fully versed on MISO's position,[16] so they do not need additional time to participate in the Commission's review of the MISO Tariff.

## II.     PARTIES

### A.     Complainants

LSP Transmission Holdings II, LLC is a Delaware limited liability company with its principal place of business at 16150 Main Circle Drive, Suite 310, Chesterfield, MO 63017.  LSP Transmission Holdings II, LLC and its subsidiaries and affiliates develop and own electric transmission projects throughout the United States.

LS Power Midcontinent, LLC is qualified to bid on regional electric transmission projects awarded by MISO in Indiana.  Central Transmission, LLC is qualified to bid on regional electric transmission projects awarded by PJM in Indiana.  LS Power Midcontinent, LLC and Central Transmission, LLC are affiliates of LSP Transmission Holdings II, LLC.

LS Power Grid DRS Holdings is the majority owner of Republic Transmission, LLC ("Republic Transmission") though Republic Transmission Holdings, LLC,[17] which has been certified as an Indiana public utility by the Indiana Utility Regulatory Commission ("Indiana Commission") after having

---

[16]     Appellants' Reply Brief, No. 24-3248 (7th Cir. Jan. 22, 2025), Dkt.80 at 1, 4, 7, 8-9, 11-12 (referencing MISO's position).

[17]     Hoosier Electric Cooperative owns 20% of Republic Transmission Holdings, LLC.

successfully qualified and competed for MISO's first Competitive Transmission

Developer Selection Process.  Republic Transmission was selected to develop the

Duff-Coleman between Indiana and Kentucky.  LRTP Project 35 (Southwest

Indiana – Kentucky, which includes two new substations, upgrades to ten existing

substations, and 88 miles of new 345kV and 138kV transmission line) is in the

same general vicinity as the Duff – Coleman project.  Republic Transmission was

also the Selected Developer for MISO's second Indiana competitive solicitation,

the Hiple to Indiana/Michigan border project (Hiple Project), which remains under

development.  LRTP Project 33 (Greentown – Sorenson – Lulu, which includes

200 miles of new 765kV transmission line) is in the same general vicinity as

Republic Transmission's Hiple project.

### B.    Respondent

The Midcontinent Independent System Operator, Inc. is a Commission-

approved Regional Transmission Organization ("RTO").  MISO is a non-stock,

not-for-profit corporation that is responsible for operating the electric grid and

administering wholesale electricity markets for the central United States.  MISO

operates across 15 states, including Indiana.

## III.  COMPLAINT

### A.    Background

Although this Complaint turns on the words of the MISO Tariff,

Complainants provide this Background information to provide the context in which

the dispute arose.  Complainants do not believe there are any facts addressed within this Background information that are disputed in a way relevant to the Complaint's requested relief.

### 1.    Events Leading To Indiana Incumbent Preference Law

Following the Commission's 2011 issuance of Order No. 1000,[18] MISO amended Attachment FF of the Tariff to require competitive selection of the developer and owner of Market Efficiency Projects and Multi-Value Projects, unless an explicit Tariff exclusion to competition was applicable.[19]

In 2020, MISO began a multi-year Long-Range Transmission Planning Process.  To support that initiative, MISO filed for, and the Commission approved, a revised cost allocation for Multi-Value Projects that allowed for Tranche 1 and Tranche 2 projects to be allocated across "Midwest MVP Cost Allocation Subregion," the eleven states in the Northern and Central parts of MISO's footprint.[20]  On July 25, 2022, the MISO Board approved over $10 billion in new

---

[18]    *Transmission Planning and Cost Allocation by Transmission Owning and Operating Public Utilities*, Order No. 1000, 136 FERC ¶ 61,051 (2011), *order on reh'g and clarification*, Order No. 1000-A, 139 FERC ¶ 61,132 (2012), *order on reh'g and clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014) (per curiam).

[19]    Attachment FF, **VIII.A. APPLICABILITY** Except as otherwise provided in Sections VIII.A.1, VIII.A.2 and VIII.A.3 of this Attachment FF, **the Competitive Developer Selection Process shall be applicable** to all transmission facilities and substation facilities included in an Eligible Project." [emphasis other than caption, added].

[20]    MISO and MISO Transmission Owners, Proposed Revisions to MISO Tariff to Modify Cost Allocation for Multi-Value Projects, filed in Docket No. ER22-995 on Feb. 4, 2022;

transmission as the LRTP Tranche 1 portfolio.  Of the portfolio, the Hiple –
Indiana/Michigan Border Project ("Hiple Project") in northern Indiana was
competitive.  Notwithstanding that the Indiana incumbent transmission owners
assert that their presence in Indiana gives them various advantages over non-
incumbent developers, these incumbents chose not to participate in the
Competitive Developer Selection Process related to the Hiple Project.  Northern
Indiana Public Service Company ("NIPSCO") has explained that instead of
submitting a proposal, it "focused on seeking a legislative solution at the Indiana
legislature for future projects."[21]

The incumbents' efforts to obtain a "legislative solution" to protect
themselves from competition succeeded; after extensive lobbying, the Indiana
legislature narrowly passed an incumbent preference law, HEA 1420 in 2023.  The
Indiana Governor signed the law, and it became effective July 1, 2023.  The
passage of the incumbent preference represented a financial windfall to utilities
like NIPSCO, as they would no longer face competition for regionally cost-

---

*Midcontinent Indep. Sys. Operator., Inc.*, 179 FERC ¶ 61,124, at P 18, *order denying reh'g*, 181 FERC ¶ 61,219 (2022).

[21]     Declaration of Orville Cocking, Senior Vice President of Electric Operations, Northern
Indiana Public Service Company, Dkt. 52-3 at ¶ 19, filed with the United States District
Court for the Southern District of Indiana on Nov. 4, 2024, in Case No. 1:24-cv-01722-
TWP-MKK.

allocated projects—not just competition on project implementation costs but also on return on equity and equity percentage in capital structures.[22]

### 2. LRTP Tranche 2

In January 2023, MISO began initial development of LRTP Tranche 2.[23]  On September 25, 2024, MISO released its final planning map for LRTP Tranche 2.1.[24]  MISO declared that

> The purpose of Tranche 2.1 is to develop a 3,631-mile 765 kV backbone that will support the transfer of high volumes of power within MISO to resolve existing system choke-points (i.e., thermal and voltage violations), help the grid respond to generation patterns and weather events, accommodate new power generation (including renewable power generation) and load growth, and to enable the transfer of electricity to level out uneven generation costs. The portfolio of 24 Tranche 2.1 Projects is spread across 323 facilities, has an anticipated cost of $21.8 Billion . . ..[25]

---

[22] *See* Duff-Colemen Selection Report at 26, available at https://www.republictransmission.com/wp-content/uploads/2021/01/1_Republic_MISO_Duff-Coleman_EHV_345kv_Selection_Report__Republic_Transmission-PDF_.pdf (last accessed February 4, 2025); Hartburg – Sabine Junction Selection Report at 20, available at https://cdn.misoenergy.org/Hartburg-Sabine%20Junction%20500%20kV%20Selection%20Report296754.pdf (last accessed February 4, 2025).

[23] MISO, MTEP 2024 Report at 26 (2024), *available at* https://cdn.misoenergy.org/MTEP24%20Full%20Report658025.pdf, last accessed February 4, 2025.

[24] https://cdn.misoenergy.org/20240925%20LRTP%20Workshop%20Item%2002%20Competitive%20Transmission%20Timeline649742.pdf, last accessed February 4, 2025

[25] *Amicus* Brief at 11.

The map of projects revealed five new projects in Indiana with 70 components.

### 3. Timeline of Litigation Regarding Indiana Incumbent Preference Law and MISO Board and MISO Staff Actions

#### (1) LS Power Files Suit and Obtains a Preliminary Injunction

Promptly following MISO's September 25, 2024 release of the proposed LRTP Tranche 2.1 regional projects, on October 2, 2024, Complainants filed a "Complaint for Declaratory and Injunctive Relief" against the Commissioners of the Indiana Utility Regulatory Commission challenging the legality of HEA 1420. Certain Indiana incumbent transmission owners ("Incumbents") intervened in the suit.[26]

The Complaint states that "Plaintiffs seek declaratory relief to invalidate Indiana Code §8-1-38-9, as amended by HEA 1420, on the ground that it violates the Commerce Clause and Supremacy Clause of the United States Constitution, as well as the Privileges and Immunities Clause of the Indiana Constitution." Complaint at ¶ 10. Plaintiffs requested, among other things:

> a. an order pursuant to 28 U.S.C. §2201 declaring that Indiana Code §8-1-38-9, as amended by HEA 1420, is unconstitutional, invalid, and unenforceable to the extent

---

[26] Incumbents are: Northern Indiana Public Service Company, Indianapolis Power & Light Company d/b/a AES Indiana, Southern Indiana Gas and Electric Company d/b/a CenterPoint Energy Indiana South, and Duke Energy Indiana, LLC. *See LSP Transmission Holdings II v. Huston*, No. 1:24-cv-1722 (S.D. Ind. Nov. 14, 2024), Dkt.56. Two months after these four incumbents intervened in the litigation, Commonwealth Edison Company of Indiana, Inc. was also granted leave to intervene. *LSP Transmission Holdings II v. Huston*, No. 1:24-cv-1722 (S.D. Ind. Jan. 14, 2025), Dkt.108.

it grants in-state transmission owners the right of first
refusal to build or acquire transmission lines in Indiana;

b. an order enjoining Defendants from enforcing Indiana
Code §8-1-38-9, as amended by HEA 1420; . . ..

On December 6, 2024, the U.S. District Court entered a preliminary

injunction, finding, among other things that Plaintiffs are likely to prevail on their

claim that the Indiana preference law violates the Commerce Clause of the United

States Constitution.[27]

### (2)   Indiana Incumbents Obtain an Administrative Stay Of The Preliminary Injunction

At approximately 4 p.m. ET on December 11, 2024—the night before the

MISO Board was scheduled to meet to approve the Tranche 2.1 projects—

Incumbents filed an Emergency Motion for a Stay of the Preliminary Injunction

pending their appeal of the District Court's order, and requested entry of an

administrative stay no later than 8:30am ET the following day.  At 8:31 a.m. ET on

December 12, 2024, the United States Court of Appeals for the Seventh Circuit

entered the requested administrative stay and set oral argument on the stay motion

for December 17, 2024.[28]  In issuing the administrative stay, the Court noted that:

---

[27]   The Preliminary Injunction Opinion and Order is attached as Attachment 3.

[28]   The Administrative Stay Order is attached as Attachment 4.

"The stay is intended to give the court an opportunity to consider adequately the Intervening Defendants' motion for a stay pending appeal."

### (3)     MISO Board Approves LRTP Tranche 2.1

On December 12, 2024, the MISO Board approved LRTP Tranche 2.1 but made no transmission developer assignments.[29]

### (4)     Seventh Circuit Initially Extends Its Stay, But Then Reinstates the Preliminary Injunction

On December 18, 2024, following oral argument on Incumbents' stay motion, the Seventh Circuit granted the motion.  The court did not express a view on the merits.[30]  It instead relied on "equitable factors," opting to reinstate "the pre-litigation status quo" because it believed that no party would suffer irreparable harm if it "expedite[d] scheduling of th[e] appeal such that a decision on the propriety of the preliminary injunction can be rendered in a matter of weeks."[31] Accordingly, the Seventh Circuit set an expedited briefing schedule under which the appeal was set to be argued on January 27, 2025.[32]  The Seventh Circuit also invited MISO and the Commission to submit amicus briefs by January 22, 2025.

---

[29]     https://cdn.misoenergy.org/MTEP24%20Appendix%20A%20-%20LRTP%20Tranche%202.1%20Projects658129.xlsx?v=20241212115102 attached hereto as Attachment 5.

[30]     Order Granting Motion for Stay Pending Appeal, Attachment 2.

[31]     *Id*. at 2.

[32]     Scheduling Order, attached as Attachment 6.

On December 19, 2024, MISO issued a public notice stating that it would review the projects in the Tranche 2.1 portfolio to determine which of the 322 new facilities in those projects "are eligible for the Competitive Developer Selection Process" and announce the schedule for releasing RFPs for all competitive facilities no later than January 13, 2025.[33]  Given those developments, on December 30, 2024, LS Power moved for reconsideration of the Seventh Circuit's stay order, arguing that MISO was poised to assign all Tranche 2.1 projects to incumbent transmission owners under HEA 1420 before the Seventh Circuit would have an opportunity to rule on the propriety of the Preliminary Injunction.  On January 12, 2025, the Seventh Circuit granted LS Power's Motion to Reconsider and lifted its stay, allowing the Preliminary Injunction to again take effect.[34]  MISO was promptly notified of the Court's determination.

### (5)    MISO Releases List of Competitive and Excluded Projects

On January 13, 2025, with the Preliminary Injunction in full force, MISO posted a list of the Tranche 2.1 facilities that it believes are eligible for competition and those it believes are excluded from competition.[35]  The Excel spreadsheet with

---

[33]    MISO Notice: Intent to Stagger Request for Proposal Release Dates, attached as Attachment 7.

[34]    Attached as Attachment 8.

[35]
        https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fcdn.misoenergy.or

the list stated: "Rights of First Refusal (ROFR) statuses based on a list posted on

MISO's website on December 6, 2024 (link:

https://www.misoenergy.org/planning/transmission-planning/mtep/eligible-

projects/ )"[36] All Indiana Projects were excluded from competition based on a

"STATE ROFR."  On the same date, MISO posted Request for Proposal ("RFP")

release dates for the competitive Tranche 2.1 projects outside of Indiana.[37]  Finally,

on January 13, 2025, MISO also sent an e-mail to the Planning SuperList stating

that "*[i]n the coming weeks*, MISO will additionally post:

> 6.      Competitive Project RFPs (per RFP Release
> Schedule)
>
> 7.      Revised Appendix A with facility Transmission
> Owner designations for all non-competitive facilities
> included in Tranche 2.1.[38]

---

g%2F20250113%2520LRTP%2520TR2.1%2520Eligible%2520Projects671260.xlsx%3F
v%3D20250113131208&wdOrigin=BROWSELINK, last accessed January 31, 2025.

[36]    The MISO list of "Rights of First Refusal" statuses specifically notes "DISCLAIMER:
For informational purposes only. MISO does not assure or guarantee the accuracy of the
information contained herein. Such information **shall not be relied upon as MISO's
recommendation** nor considered legal advice."  The disclaimer is particularly
appropriate as MISO lists Mississippi in its list of states with a "Right of First Refusal"
when Mississippi has no such law as that term is commonly understood in the context of
preference laws.

[37]
https://cdn.misoenergy.org/LRTP%20Tranche%202.1%20RFP%20Release%20Schedule6
71259.pdf , last accessed February 4, 2025.

[38]    Attachment 9.

    **4.**    **MISO Files *Amicus* Brief With Seventh Circuit Asserting That HEA 1420 Remains an "Applicable Law[]" Despite the Preliminary Injunction**

On January 22, 2025, MISO filed its *Amicus* Brief. In that filing, MISO confirmed that four of the five Tranche 2.1 projects in Indiana are impacted by its application of HEA 1420.[39] Those four projects are:

(1) LRTP Project 33, MTEP Project 50566: Greentown – Sorenson – Lulu, which includes upgrades to three substations and 200 miles of new 765kV transmission line;

(2) LRTP Project 35, MTEP Project 50568: Southwest Indiana – Kentucky, which includes two new substations, upgrades to ten existing substations, and 88 miles of new 345kV and 138kV transmission line;

(3) LRTP Project 36, MTEP Project 50569: Southeast Indiana, which includes two new substations, upgrades to nine existing substations, 13 miles of new 345kV transmission line, and upgrades to 33 miles of existing transmission lines;

(4) LRTP Project 40, MTEP Project 50573: Sub T – Woodford County – Collins & Reynolds, which includes one new substation, upgrades to two existing substations, 349 miles of new 765kV transmission line, and upgrades to 27 miles of existing 345kV transmission line.

These four projects represent 549 miles of new 765 kV transmission and 101 miles of new 345 kV transmission.

---

[39] In its *Amicus* Brief, MISO asserted that the fifth Indiana project (Project 34) was excluded from competition by "both the Indiana ROFR law and another of the exceptions listed in Section VIII.A, and thus will not be impacted by the outcome of this dispute." *Amicus* Brief at 12 n.7. To the extent that the Commission grants this Complaint, that fifth project would be subject to the outcome of this Complaint insofar as MISO has excluded that project from competition on the basis of the Indiana incumbent preference law. At this time Complainants have not evaluated MISO's assertion that another exception to competition applies.

MISO's brief acknowledged that a "permanent injunction" would "render[] HEA 1420 no longer an 'Applicable Law' within the meaning" of its tariff— meaning that MISO would no longer rely on HEA 1420 to award these new interstate transmission projects to incumbents without competition.[40]  But MISO nevertheless took the position that the Preliminary Injunction "does not impact how MISO treats HEA 1420 under its tariff" because the District Court's accompanying opinion "did not hold that HEA 1420 is unconstitutional on the merits, but rather only that Plaintiffs had established a 'likelihood of success' on the merits of an argument that HEA 1420 is unconstitutional."[41]  MISO thus concluded that "notwithstanding the PI Order, HEA 1420 remains an 'Applicable Law' that grants incumbent utilities in Indiana a ROFR, and MISO will give effect to such law."[42]  The *Amicus* Brief specifically contemplated that Complainants might challenge this interpretation of the Tariff and stated that "FERC is the proper forum for any [such] challenge."[43]

---

[40]     *Amicus* Brief at 17-18 & n.11.

[41]     *Id*. at 4.

[42]     *Id*.

[43]     *Id*. at 23 (capitalization and emphasis altered).

**B.     MISO Violated Its Tariff In Excluding Tranche 2.1 Indiana Projects From The Competitive Transmission Process On The Basis That A Law Remains "Applicable" Even When It Is Unenforceable Due To A Preliminary Injunction**

MISO's Tariff generally requires multistate projects such as those that make up the Tranche 2.1 portfolio to be awarded through competitive bidding.

> **VIII Competitive Transmission Process**
> **VIII.A. APPLICABILITY**
> **Except as otherwise provided** in Sections VIII.A.1,
> VIII.A.2 and VIII.A.3 of this Attachment FF, **the Competitive Developer Selection Process shall be applicable** to all transmission facilities and substation facilities included **in an Eligible Project**.[44]

Section VIII.A.1 of the Tariff contains an exception when there is an "applicable" state preference law.[45]

> **VIII.A.1. State or Local Rights of First Refusal**
> The Transmission Provider shall comply with any
> Applicable Laws and Regulations granting a right of first
> refusal to a Transmission Owner.  The Transmission
> Owner **will be assigned** any transmission project **within
> the scope, and in accordance with the terms, of any**

---

[44]     Tariff, Attachment FF, VIII, emphasis added.  MISO's Module A provides "**Eligible Projects**: "Shall mean any Market Efficiency Projects ('MEP') and Multi-Value Projects ('MVP') approved by the Transmission Provider's Board after December 1, 2015 regardless of whether such project is subject to the Transmission Provider's Competitive Developer Selection Process."

[45]     At this time LS Power has not evaluated the designation of projects as excluded from the Competitive Developer Selection Process because the projects are "Upgrades" As reflected in Attachment 5.  Further, MISO appears to also violate its Tariff by excluding MISO planned projects from the Competitive Transmission Process on the assertion that the exclusion is "PJM." *See, e.g.*, Attachment 5, Project 31, lines 137, 138, Project 33, line 152, Project 35, lines 187, 188, 199, Project 36, lines 221, 222, 231, 247, 248, and Project 42, line 321.  "PJM" is NOT one of the exclusions enumerated in Attachment FF, VIII.A.  The Commission should, on its own Motion, issue a show cause order under Section 206 as to MISO's creation of an exclusion that does not exist in the MISO Tariff.

> **Applicable Laws and Regulations** granting such a right of first refusal. These Applicable Laws and Regulations include, but are not limited to, those granting a right of first refusal to the incumbent Transmission Owner(s) or governing the use of existing developed and undeveloped right of way held by an incumbent utility."[46]

That Tariff provision provides that the "Transmission Provider **shall comply** with any **Applicable Laws and Regulations** granting a right of first refusal to a Transmission Owner." The Tariff's definition of the term "Applicable Laws and Regulations" makes clear that this requirement only applies to laws that are "applicable:"

> **Applicable Laws and Regulations:** All duly promulgated **applicable** federal, state and local laws, regulations, rules, ordinances, codes, decrees, judgments, directives, or judicial or administrative orders, permits and other duly authorized actions of any Governmental Authority having jurisdiction over the Parties, their respective facilities and/or the respective services they provide.[47]

The Tariff requirement that MISO "shall comply with any Applicable Laws and Regulations granting a right of first refusal to a Transmission Owner" when "assign[ing]" new transmission projects thus turns on whether there is an "applicable" law related to Indiana projects. HEA 1420 does not trigger this exception, however; it is not currently "applicable" because a court has enjoined its

---

[46]    Tariff, Attachment FF, Section VIII.A.1, any bolding other than captions is added.

[47]    MISO Module A Common Tariff Provisions, any bolding other than captions is added.

enforcement.  MISO's contrary contention that state laws remain "applicable" unless and until they are *permanently* enjoined does not withstand scrutiny.

The Tariff draws no distinction between preliminary or permanent judicial orders or decrees, or whether a law has been rendered *in*applicable temporarily or permanently; it simply requires MISO to follow "Applicable Laws."  Tariff, Attachment FF, §VIII.A.1.  And, not only is HEA 1420 currently inapplicable because of the Preliminary Injunction, but the injunction order itself is an "Applicable Law[]" under MISO's tariff.  Consequently, MISO clearly violated its Tariff by disregarding the Preliminary Injunction and relying on HEA 1420 to exclude the Indiana projects from the Competitive Developer Selection Process.  MISO's failure to list the relevant projects as competitive is a violation of the filed rate, which the Commission must correct through this Complaint.

### 1.    MISO's Tariff Application Is Inconsistent with the Plain Language of the Tariff and Well-Settled Rules About How Injunctions Operate

MISO asserts that in determining "Applicable Laws and Regulations" for competitive exclusion it is not bound by the preliminary injunction prohibiting Indiana's enforcement of HEA 1420.  MISO's position that "HEA 1420 remains an 'Applicable Law'"[48] even though a court has enjoined its enforcement defies the

---

[48]    *Amicus* Brief at 4.

text of the Tariff and plain meaning of "applicable." A law is "applicable" if it is "capable of or suitable for" being "put into operation or effect." Applicable, *Merriam-Webster Dictionary*, https://tinyurl.com/8zrwxecf (last visited Feb. 4, 2025); Apply, *Merriam-Webster Dictionary*, https://tinyurl.com/2uhrr8xm (last visited Feb. 4, 2025); *accord* Applicable, *Am. Heritage Dictionary of the Eng. Language*, https://tinyurl.com/28kpv9vx (last visited Feb. 4, 2025) ("[c]apable of being applied; relevant or appropriate"); Applicable, *Black's Law Dictionary* (12th ed. 2024) ("fit and right to be applied"). Where, as here, a federal court has prohibited the only officials with the power to enforce a statute from doing so, the statute plainly is not "capable of"—much less "suitable for"—being given effect.

It also makes scant sense to treat HEA 1420 as "applicable" when the District Court's order *prohibiting enforcement of* HEA 1420 is itself an "Applicable Law[]" within the meaning of MISO's Tariff. The Tariff expressly includes "judicial or administrative orders" in its definition of "Applicable Laws," and the Tariff definition makes no distinction between preliminary injunctions and permanent injunctions (or preliminary orders and final orders more generally). The Tariff definition does not require a "final" judgment, as MISO asserts; it instead refers broadly to "judicial or administrative orders."

MISO argues that Attachment FF, §VIII.A.1 requires it to follow only "Applicable Laws and Regulations *granting a right of first refusal to a*

26

*Transmission Owner*," and to disregard "Applicable Laws and Regulations" *removing or prohibiting enforcement of* such rights.[49]  That asymmetry is inconsistent with the structure of §VIII.A, which makes competition the default and only permits compliance with state preference laws as an exception, as well as the broader context of the Tariff, which makes clear that MISO and MISO participants must generally comply with *all* "Applicable Laws."  The Tariff's broad definition of Applicable Laws and Regulations thus provides continuity:  It permits, as here, for a "judicial . . . order[]" to impact whether there is an "applicable . . . state . . . law[]."

MISO's insistence that only permanent injunctions matter reflects a fundamental misunderstanding of how an injunction (or any judicial order) operates.  MISO emphasizes that the district court's preliminary injunction *opinion* "did not hold that HEA 1420 is unconstitutional on the merits, but rather only that [LSP] had established a 'likelihood of success' on the merits."  *Amicus* Brief at 4, 17-18.  But federal courts do not exercise power through the persuasive effect of their opinions; they do so through the coercive effect of their *orders*.  *See Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).  And it is black-letter law that "a preliminary injunction has all of the force of a permanent injunction during its period of effectiveness."  Wright & Miller, *supra* §2947.  Neither type of

---

[49]     *Amicus* Brief at 17 (emphasis added).

injunction "remove[s] HEA 1420 from the Indiana statute rolls," *Amicus* Brief at 16, but both types render the relevant law "[ina]pplicable" and therefore obviate any obligation to "comply with" it, Tariff, Attachment FF, §VIII.A.1.

MISO fails to identify (and LSP is not aware of) *any* case in which *any* court has concluded that a preliminary injunction does not have the same force as a permanent injunction. That is unsurprising; as explained, a preliminary injunction operates "in the same way as does a permanent injunction." Wright & Miller, *supra*, §2947. And the notion that unconstitutional laws like HEA 1420 remain "applicable" unless and until there is a *permanent* injunction would lead to absurd results. LSP could not sue to challenge HEA 1420 until it faced a concrete, imminent threat of injury—materialized when MISO announced the details of the Tranche 2.1 projects on September 24, 2024. By January 13, 2025, MISO had "announced" that the Indiana projects in Tranche 2.1 "would be assigned to incumbent utilities," *Amicus* Brief at 12—an action MISO claims is irrevocable if "done consistent with the Tariff," *Amicus* Brief at 20. Four months is enough time to litigate a preliminary injunction motion, but not to litigate a complex case to final judgment. MISO's submission that LSP can obtain relief only through a final judgment thus creates an unprecedented, unworkable system that would effectively foreclose any chance of ever securing competition on these Indiana projects. That is exactly the kind of injury preliminary injunctions exist to prevent, and it strains

credulity to believe that MISO's FERC-approved Tariff was ever intended to permit the assignment of projects pursuant to an unconstitutional incumbent preference statute to stand forever just because MISO's announcement of the projects in question occurred so close to the date of MISO's actual assignment of the projects to incumbents that there is insufficient time to litigate the constitutionality of the statute to completion prior to the date of assignment.

MISO's effort to distinguish preliminary from permanent injunctions on the ground that only the former "remain[] subject to change," *Amicus* Brief at 17, is equally unavailing. A permanent injunction is "subject to change" too; it may be modified or vacated on appeal (even long after it was issued). Indeed, HEA 1420 itself is "subject to change," as the legislature could amend or repeal it at any time. MISO recognized this very fact in its Notice identifying RFP dates for the LRTP projects it concedes are competitive, declaring: "The listed Competitive Transmission Facilities, Competitive Transmission Projects, and/or planned RFP release dates may be revised in the event of changes to Applicable Laws and Regulations, including state and local laws granting a Right of First Refusal."[50]

---

[50]     LRTP Tranche 2.1 Request for Proposals (RFPs) Release Schedule, available at https://cdn.misoenergy.org/LRTP%20Tranche%202.1%20RFP%20Release%20Schedule671259.pdf, last accessed February 4, 2025.

In making this pronouncement MISO appears to put all parties on notice that it may pull a competitive RFP if the law changes.[51]  This is precisely the same risk MISO seems to complain about in asserting that it need not recognize that the Preliminary Injunction rendered Indiana's law unenforceable.  If HEA 1420 were ultimately upheld, MISO could immediately terminate any competitive RFP process it had initiated in response to the Commission's granting of this Complaint.  Subsequently, with MISO Board approval, MISO could immediately assign the relevant projects to the appropriate incumbent transmission owners, just as MISO is saying it plans to do in the event new incumbent laws are passed during the period of time (which is expected to be upwards of a year) between the start of the competitive RFP processes and the assignment of the projects pursuant thereto.  MISO's in-service dates for LRTP Tranche 2.1 provide more than sufficient time for MISO to commence and complete competitive processes for every project, including the Indiana projects.

LSP's plain-language reading of "applicable" in no way requires MISO "to preemptively forecast changes in law or to act in anticipation of Court rulings."[52]  It just requires MISO to "assign[]" new "transmission project[s]" based on

---

[51]    Incumbent utilities in those states with LRTP Tranche 2.1 competitive projects continue to lobby state legislatures in search of their own preference laws.

[52]    *Contra Amicus* Brief at 18.

whatever laws are "applicable" (i.e., in effect) at the time—just as MISO's tariff contemplates. Tariff, Attachment FF, §VIII.A.1. If MISO would prefer to apply state ROFR laws until final judgments have issued and all appeals have been exhausted, it may petition the Commission for permission to so alter its Tariff. But it cannot unilaterally insert an atextual absolute-finality requirement into its Tariff.

### 2. MISO's *Amicus* Brief Misstates Commission Precedent

In its *Amicus* Brief, MISO misstates the interaction between Iowa litigation as to whether an Iowa preference law violated the Iowa Constitution and the Commission's findings in *ITC Midwest, LLC*, 185 FERC ¶ 61,123 (2023) (*ITC*). MISO argued to the Seventh Circuit that

> A preliminary injunction concluding that there is a likelihood of success on a challenge to a state ROFR law as unconstitutional thus does not excuse MISO from applying that law pursuant to its Tariff.

> Notably, FERC reached that very conclusion under highly analogous circumstances, i.e., a dispute over the impact of a preliminary injunction issued in litigation challenging the constitutionality of a state ROFR law on whether MISO's Tariff should give effect to that law.[53]

The issue before the Commission in *ITC* had nothing to do with MISO's obligation in the face of a preliminary injunction issued **before** MISO or the MISO Board assigns projects. In *ITC*, there was no dispute that at the time of MISO's action,

---

[53]    *Amicus* Brief at 18.

there was no injunction, preliminary or permanent, prohibiting the enforcement of Iowa's preference law.  Instead, the Iowa Supreme Court issued a preliminary injunction months *after* MISO assigned the relevant projects.

Further, the issue for the Commission in *ITC* did not relate to the application of MISO's Tariff at all, but instead addressed only whether, having been assigned the projects pursuant to a preference law in effect at the time of assignment, ITC was entitled to the abandonment incentive under Commission precedent.  The Commission concluded (over then-Commissioner Christie's dissent) that entitlement to the abandonment incentive was not impacted by the Iowa Supreme Court's injunction, which postdated not only the assignment of the projects but also the abandonment incentive filing.  *ITC* has no relevance here, where the issue is whether MISO must recognize a preliminary injunction issued *before project assignment* when determining whether a state preference law "[a]ppli[es]" to exclude competition.

### 3.    MISO's Tariff Interpretation Has Far Reaching Impacts Beyond Transmission Project Assignment

It is important to note that the definition of "Applicable Laws and Regulations" is a "Common Tariff Provision."  As such, the implications of MISO's position go beyond simply whether MISO may ignore a preliminary injunction when determining whether a state preference law is "applicable."  Numerous other Tariff provisions require MISO and MISO participants to comply

32

with Applicable Laws and Regulations.  Attachment FF alone references

Applicable Laws and Regulations over a dozen times.  For example, a

Transmission Developer Applicant must submit a written commitment to "comply

with all Applicable Laws and Regulations" related to project design, construction

and operation.[54]  In submitting a Proposal to an RFP for a competitive project an

RFP Respondent is required to submit "an affidavit as part of the Proposal

submission, signed by an officer of its organization, attesting that: . . . (v) has

complied with all Applicable Laws, and Regulations and Good Utility Practice in

preparing the Proposal."[55]  Republic Transmission as a Selected Developer is

constrained to apply Applicable Laws and Regulations in the Selected Developer

Agreement it executed for its competitive selected projects as MISO's *pro forma*

Selected Developer Agreement references Applicable Laws and Regulations

multiple times.[56]  MISO's atextual construction of "Applicable Laws and

Regulations" would seem to open significant debate as to whether other entities

that the Tariff obligates to comply with "Applicable Laws and Regulations" can

ignore a preliminary injunctions and only follow such court orders that they deem

sufficiently "final."  At a minimum, MISO's approach here will create market

---

[54]    Attachment FF, Section VIII.B.4.(c)

[55]    Attachment FF, Section VIII.D.5.12.

[56]    Attachment FF, Appendix 1.

confusion as to what "decrees, judgments, directives, or judicial or administrative orders" must be followed by those charged with adhering to Applicable Laws and Regulations, and which need not be followed.

Like the Commission's *pro forma* LGIA, MISO's Generation Interconnection Procedures ("GIPs") also include a definition of Applicable Laws and Regulations[57] similar to the Common Tariff Provisions definition, further demonstrating the problem with MISO's stance that preliminarily enjoined laws remain "applicable." MISO's GIPs require interconnecting generators to follow Applicable Laws and Regulations related to environmental issues.[58] Under MISO's interpretation, a preliminary injunction staying a (likely) invalid EPA order would not protect an interconnecting generator from the obligation to comply with the order, as the preliminary injunction would not represent a final adjudication on the merits.

---

[57]    MISO Tariff, Attachment X, "**Applicable Laws and Regulations** shall mean all duly promulgated applicable federal, state and local laws, regulations, rules, ordinances, codes, decrees, judgments, directives, or judicial or administrative orders, permits and other duly authorized actions of any Governmental Authority having jurisdiction over the Parties, their respective facilities and/or the respective services they provide."

[58]    MISO Tariff, Attachment X, "**Environmental Law** shall mean Applicable Laws or Regulations relating to pollution or protection of the environment or natural resources."

**4. As Relief for MISO's Tariff Violation the Commission Should Direct MISO to List Indiana Projects as Competitive as Required by Applicable Laws and Regulations as Defined in the Tariff**

MISO has violated the plain language of the filed rate in its refusal to list the Indiana projects as subject to MISO's Competitive Developer Selection Process. Under the Tariff, with the Preliminary Injunction in place, there is no enforceable "Applicable Law[] or Regulation[] granting such a right of first refusal" that allows MISO to exclude the Indiana Projects from the default Competitive Transmission Process required under Attachment FF, § VIII. By the earlier of 20 days from MISO's Answer or March 11, 2025 (the next MISO Board meeting) the Commission must require MISO to apply the Tariff appropriately and list the Indiana Projects as competitive.

**C. To The Extent That MISO Claims To Have Assigned The Indiana Projects To Indiana Incumbents During The Preliminary Injunction Stay, MISO's Claimed Assignment Failed To Follow The Tariff On Assignment Of Non-Competitive Transmission Projects**

MISO's Tariff provides that new transmission projects "will be *assigned* … in accordance with the terms[] of any Applicable Laws and Regulations" granting a right of first refusal to incumbent Transmission Owners.[59] To the best of Complainants' knowledge, MISO has not yet assigned the Tranche 2.1 projects in

---

[59]     Attachment 1 (emphasis added).

Indiana to specific incumbent transmission owners (and, as explained above, the Preliminary Injunction precludes it from doing so). But to the extent that MISO may claim that it has already assigned the disputed projects to incumbents, *see Amicus* Brief at 20, any such assignment would have violated the Tariff.

On December 12, 2024, the MISO Board approved a list of MTEP projects. Following that Board action, MISO released three spreadsheets of projects. As shown in Attachment 5, the Board-approved list did not designate the transmission developer for any of the Tranche 2.1 LRTP projects. On January 13, 2025, when MISO excluded the Indiana projects from its list of competitive projects, MISO again gave no indication to stakeholders that it had "assigned" the Indiana projects to incumbent Indiana transmission owners; its spreadsheet had a column simply referencing Local TO for excluded projects. Moreover, in its e-mail to planning stakeholders, MISO indicated that in the "coming weeks" MISO would post "Revised Appendix A with facility Transmission Owner designations for all non-competitive facilities included in Tranche 2.1."[60]

MISO's *Amicus* Brief equivocates on whether the disputed Indiana projects have been assigned. On page 12, for example, the brief states: "MISO announced, on January 13, 2025, which projects within that Tranche *would be assigned* to incumbent utilities based on applicable exclusions from the Competitive Developer

---

[60]    Attachment 9.

36

Selection Process . . ..”[61]  On page 20, however, the brief states: “As discussed above, MISO's assignment *was done* consistent with the Tariff.”[62]  And the brief proceeds to assert that “if MISO were now to *revoke its prior assignment* of Tranche 2.1 Projects in Indiana without complying with its Tariff process, those actions would raise significant questions regarding the filed rate doctrine, which generally dictates that any changes to a valid Tariff can only be made prospectively.”[63]  Of course, at all times from January 12, 2025, through MISO's submission of its *Amicus* Brief on January 22, 2025, the Preliminary Injunction has been in force—preventing MISO under its Tariff from relying on HEA 1420 to exclude the Indiana projects from competition.  To the extent that the Commission grants the initial Complaint claim and MISO's claimed assignment occurred on or after January 13, 2025, the resolution of the initial claim would render any such assignment a violation of the Tariff.

MISO's *Amicus* Brief does not assert that MISO assigned the relevant Indiana projects to incumbents at a time when the Seventh Circuit had stayed the Preliminary Injunction—i.e., between December 12, 2024 and January 12, 2025. To the extent MISO claims that occurred, however, any such assignment would

---

[61]     *Amicus* Brief at 12, emphasis added.

[62]     *Id*. at 20.

[63]     *Id*.

have violated the Tariff because the Tariff provides that only the MISO Board can

approve the assignment of non-competitive projects to particular transmission

owners.  In particular, the Tariff provides:

> **V. Designation of Entities to Construct, Implement, Own, Operate, Maintain, Repair, Restore, and/or Finance MTEP Projects:**
>
> **With the exception of Competitive Transmission Projects**, **for each project included in the recommended MTEP Appendix A <u>and prior to approval by the Transmission Provider Board</u>, the plan shall designate one or more Transmission Owners** to construct, own, operate, maintain, repair, restore, and finance the recommended project, based on the planning analysis performed by the Transmission Provider and based on other input from participants, including, but not limited to, any indications of a willingness to bear cost responsibility for the project; and applicable provisions of the ISO Agreement.  **Regarding Competitive Transmission Projects, upon the determination of the Selected Developer(s) for such projects, as set forth in Section VIII of this Attachment FF, the Transmission Provider shall update the approved MTEP Appendix A by identifying the Selected Developer(s) for each Competitive Transmission Project.** Should the facilities from such Competitive Transmission Projects not be approved by state regulatory authorities as Competitive Transmission Facilities, but instead as upgrades to existing transmission facilities, as defined in Section VIII.A.2 of this Attachment FF, the Transmission Provider shall update MTEP Appendix A by designating the appropriate Transmission Owner(s) to construct, own, operate, maintain, repair, restore, and finance such facilities in accordance with the ISO Agreement.[64]

---

[64]  Tariff, Attachment FF, Section V, any bolding and underlining other than caption is added.

As those provisions make clear, if a project is to be excluded from competition, then the "designation" of (i.e., assignment to) the incumbent transmission owner that will construct and own the project must be proposed "prior to approval by" the MISO Board, which must then approve it. Assignment of non-competitive projects to particular incumbent transmission owners thus cannot be made by MISO staff and employees after the MISO Board has approved a set of projects as a general matter (but without individual project designations), as the Tariff states in the clearest possible language that the MISO Board itself must approve those assignments.

The Common Tariff Provisions define a Competitive Transmission Project as "[t]he Competitive Transmission Facilities contained within an Eligible Project." So if MISO intended to exclude portions of Eligible Projects from the Competitive Developer Selection Process on December 12, 2024, then the transmission owners designated for those excluded projects would have needed to be listed in the plan provided to the MISO Board for approval on that date. But no such designation was proposed before December 12, 2024, so the MISO Board could not vote on project assignments as required by the Tariff; it could merely approve the overall MTEP. Accordingly, the MTEP Attachment A spreadsheet for Tranche 2.1 projects released on December 12, 2024 (after the MISO Board approved the MTEP) did not reflect any assignments to specific incumbent

39

Transmission Owners.  And Complainants are unaware of any submission to the MISO Board between December 12, 2024 and January 12, 2025 in which the Board was provided with a plan for it to approve designating "one or more Transmission Owners to construct, own, operate, . . ." the Indiana projects.

As discussed *supra*, in its January 13, 2025 email to the Planning SuperList, MISO asserted that "[i]n the coming weeks, **MISO** will additionally post: . . . 7. Revised Appendix A with facility Transmission Owner designations for all non-competitive facilities included in Tranche 2.1."[65]  Section V is clear, though, that the MISO Board is required to be presented with and approve a designated transmission owner for every project except "Competitive Transmission Projects."

Further supporting that only the MISO Board may designate transmission owners for projects under a preference law, Section V lists only two instances in which the employees and staff of the operating entity may amend Appendix A. Section V allows MISO to "update" Appendix A upon the determination of the Selected Developer for Competitive Transmission Projects or if a State Commission determines that a Competitive Transmission Project is not approved as a Competitive Transmission Project but instead "as upgrades to existing transmission facilities."  Under each of those scenarios, consistent with the first sentence of Section V, the projects would have initially been designated as

---

[65]     Attachment 9, emphasis added.

Competitive Transmission Projects thus excluding them from required MISO Board approval.

Nothing in Section V allows MISO to circumvent the requirement that the MISO Board must be presented with and vote on a plan proposing the designated transmission owner for all excluded projects. Section V instead provides that it is only MISO's independent Board that can approve the transmission plan and accompanying designation of transmission developers, except when those developers are selected through competitive bidding.

MISO may assert that Section VIII.C somehow eliminates the requirement for Board approval of the transmission owner designation of declared non-competitive projects. Section VIII.C addresses Requests for Proposal for Competitive Transmission Facilities, not assignment of non-competitive projects. It provides: "Should Appendix A of a Transmission Provider Board approved MTEP contain Eligible Projects, the Transmission Provider will review each such Eligible Project to determine whether or not it contains any Competitive Transmission Facilities." MISO may contend that because its determination of which components of an Eligible Project are competitive occurs after the Board Approval of Appendix A, that the Section implies that MISO staff may assign the portions of Eligible Projects excluded from Competitive Transmission Facilities. That is not a viable interpretation of the Tariff, however, because it would require

the plain language of Section V, which mandates that the MISO Board be provided

designations of transmission owner developers for non-competitive facilities *before*

voting on the MTEP, to simply be ignored.  "It is also a well-settled principle of

law that agreements and tariffs are to be given a reasonable construction over one

which results in unfair, unusual, absurd, or improbable results."[66] FERC must

interpret tariffs like contracts and "enforce unambiguous tariff language."[67]

Further, a "tariff should not be interpreted in a manner that renders one of its terms

meaningless." [68]   If "FERC's order[] directly conflict[s]  with the plain meaning of

the tariff [that] alone merits a reversal."[69]

The requirements of Section VIII.C of MISO's Tariff can easily be

harmonized with the requirements of Section V or the Tariff without rendering

meaningless Section V's crystal-clear MISO Board approval requirement.  For

example, the MISO Board could be provided with, and approve as part of its

overall approval of a plan, a list of designated transmission owner developers for

all Eligible Projects, which list could indicate that the designations will not be

---

[66]     AEP Generating Co., 39 FERC ¶ 61,158, at 6 (1987) (*citing Penn Central Co. v. General Mills, Inc.*, 439 F.2d 1338, 1340-41 and cases cited therein (8th Cir. 1971); Restatement, Second, Contracts, §§ 202-203).

[67]     *Long Island Power Auth. v. FERC*, 27 F.4th 705, 716, 456 U.S. App. D.C. 88 (D.C. Cir. 2022).

[68]     *Idaho Power Co. v. FERC*, 312 F.3d 454, 462 (D.C. Cir. 2002), *citing Great Lakes Gas Transmission Ltd. P'ship*, 93 F.E.R.C. P 61,008 at 61,019 & n.8 (2000).

[69]     *Idaho Power Co*. 312 F.3d at 462.

given effect insofar as any Eligible Projects are determined by MISO staff to contain Competitive Transmission Facilities.  That approach creates continuity between the various Tariff provisions.  Conversely, if MISO advances an interpretation of Section VIII.C as referenced above, then, in order to accept MISO's interpretation, the Commission would be required to both read clear and unambiguous language in Section V completely out of the Tariff and also infer an intent into Section VIII.C to deprive the MISO Board of voting authority that is directly contrary to the intent specified in the plain language of Section V.  Such an interpretation of Sections V and VIII.C. would violate basic tariff interpretation principles.

> When interpreting a disputed tariff provision, the Commission first asks whether the plain meaning of the provision is 'clear on its face' or if the provision is ambiguous. '[A] tariff is not ambiguous simply because the parties disagree as to its interpretation.' Rather, ambiguity arises where a tariff is 'reasonably susceptible of different constructions or interpretations.'[70]

Here there is no ambiguity as the language within the two provisions is clear and can be harmonized.[71]

---

[70]    *Whitetail Solar 3, LLC*, 180 FERC ¶ 63,009, at P 40 (2022).

[71]    Even if the Commission were to find ambiguity, "the ambiguity must be resolved by reference to the contract or tariff as a whole." *Id*. The tariff as a whole is clear that MISO has assignment authority only for developers selected though MISO's Competitive Developer Selection Process, with the MISO Board voting on a plan with all other developers designated.

Based on the foregoing, because the MISO Board was not presented a plan with a designation of transmission owner developers for non-competitive projects as required by Section V, any assignment MISO may claim to have made while the Preliminary Injunction was briefly stayed violated the Tariff and is ineffective. And because the Preliminary Injunction currently is in place, the MISO Board cannot now approve any assignments based on the enjoined Indiana law.

## IV.  OTHER REQUIRED INFORMATION FOR COMPLIANCE WITH RULE 206

### A.    Identification of the Action or Inaction (18 C.F.R. § 385.206(b)(1))

MISO violated the plain language of Section VIII.A of Attachment FF of its Tariff by excluding Tranche 2.1 projects located in Indiana from the list of regional projects eligible for the Competitive Transmission Process based on enjoined Indiana law (HEA 1420).  In addition, to the extent MISO may assert that it "assigned" those Indiana projects during the period when the preliminary injunction of HEA 1420 was stayed, MISO also violated the Tariff's requirement that the Board approve designations of transmission developers for projects that are not subject to the competitive process.

### B.    Explanation of the Violation (18 C.F.R. § 385.206(b)(2))

On January 13, 2025, MISO posted a list of Tranche 2.1 regional projects eligible for the Competitive Transmission Process.  MISO excluded Tranche 2.1 regional projects located in Indiana based on Section VIII.A.1, which requires

MISO to comply with "Applicable Laws and Regulations granting a right of first refusal to a Transmission Owner." But there was not, and currently is not, a right-of-first-refusal law in effect in Indiana because the United States District Court for the Southern District of Indiana has preliminarily enjoined enforcement of HEA 1420 in *LSP Transmission Holdings II v. Huston*, No. 1:24-cv-1722. To the extent that MISO claims that it assigned the Indiana Tranche 2.1 projects at a time when the preliminary injunction of HEA 1420 was not in effect, MISO's assignment violated the Tariff requirement that the MISO Board be presented with those designations before it approves the plan.

### C.    Description of Business, Commercial, Economic, or Other Issues Presented, the Financial Impact, and the Practical/Operational Impact (18 C.F.R. § 385.206(b)(3)-(5))

Absent relief, LS Power Midcontinent, LLC, a Qualified Transmission Developer in MISO, and other Qualified Transmission Developers such as Republic Transmission,[72] will lose the opportunity to compete for more than $1 billion in new interstate transmission projects located in Indiana, and the projects will be directly assigned to incumbent transmission owners. The practical impact is that incumbent transmission owners will move forward with developing the Tranche 2.1 regional projects in Indiana, making it difficult to unwind the

---

[72]    A developer must be certified by MISO as a Qualified Transmission Developer to submit a proposal in response to a request for proposals. *See* Section VIII of Attachment FF of the MISO Tariff.

assignment and hold a Competitive Transmission Process. The end result is that consumers in the Midwest MVP Cost Allocation Subregion will pay more for Tranche 2.1 regional projects located in Indiana and lose the benefits and protections of competition. In addition, the Preliminary Injunction prohibiting enforcement of HEA 1420 applies to all of Indiana, including those portions of Indiana within PJM. Because the PJM Tariff has a similar definition of "Applicable Laws and Regulations," MISO's application of its Tariff definition and the Commission's interpretation thereof could impact how the phrase is interpreted by PJM. Other LS Power entities, including Central Transmission, LLC, are qualified PJM transmission developers and could be impacted by the Commission determination in this matter.

### D.    Other Pending Proceedings (18 C.F.R. § 385.206(b)(6))

On July 22, 2022, six industrial consumer groups[73] filed a complaint in Docket No. EL22-78-000 challenging whether the Attachment FF language that MISO has misapplied is just and reasonable.[74] The Commission has not ruled on the complaint. That Complaint does not challenge MISO's application of the Tariff

---

[73]    The six industrial customer groups include the Industrial Energy Consumers of America, the Coalition of MISO Transmission Customers, the Wisconsin Industrial Energy Group, the Resale Power Group of Iowa, the Association of Businesses Advocating Tariff Equity, and the Michigan Chemistry Council.

[74]    Complaint of the Industrial Energy Consumers of America, et. al, filed in Docket No. EL22-78-000 on July 22, 2022.

provisions at issue here, or the proper interpretation of the definition for "Applicable Laws and Regulations. Resolution of the instant Complaint will not impact resolution of the complaint in EL22-78-000.

### E.     Relief Requested (18 C.F.R. § 385.206(b)(7))

Complainants request that the Commission find, by the earlier of 20 days from MISO's Answer or March 11 (the next MISO Board meeting), that MISO has violated Section VIII of Attachment FF of its Tariff by excluding Indiana LRTP Tranche 2.1 projects from competition based on HEA 1420 at a time when a federal court had preliminarily enjoined enforcement of HEA 1420, and request that the Commission direct MISO to include the relevant Indiana LRTP Tranche 2.1 projects on the list of the projects eligible for the Competitive Transmission Process.[75] Further, to the extent that MISO claims it assigned the projects during a period when the Preliminary Injunction was stayed, Complainants request that the Commission hold that any such assignment was violative of the Tariff and ineffective because the Tariff requires that the MISO Board approve all designations of transmission developers for facilities not awarded through competitive bidding.

---

[75]     As explained above, Complainants have not evaluated whether other exclusions would apply.

### F.    Attachments (18 C.F.R. § 385.206(b)(8))

The following items are included as attachments:

- Attachment A (Form of Notice of Complaint)

- Attachment 1 – *Amicus* Brief of MISO

- Attachment 2 – Order Granting Stay Pending Appeal

- Attachment 3 – Preliminary Injunction Opinion and Order

- Attachment 4 – Order Granting Administrative Stay

- Attachment 5 – MTEP 24 Appendix A – LRTP Tranche 2.1

- Attachment 6 – Scheduling Order

- Attachment 7 – LRTP Tranche 2.1 Notice of Intent to Stagger RFPs

- Attachment 8 – Order Lifting Stay of PI

- Attachment 9 – January 13, 2025 Email to planning SuperList re Tranche 2.1 Competitive Transmission Process

### G.    Other Processes Used to Resolve the Complaint (18 C.F.R. § 385.206(b)(9))

Given the urgency of the issues set forth in the Complaint, the Enforcement Hotline, Dispute Resolution Service, and the MISO tariff-based dispute resolution mechanism were not used nor viable.  However, Complainants have attempted to maintain informal communications with MISO's legal counsel during the course of the Indiana litigation in an effort to obviate the need for this Complaint.

**H.      Notice of Complaint (18 C.F.R. § 385.206(b)(10))**

A form notice of the Complaint is appended to the Complaint at Attachment

A.

**I.      Basis for Fast Track Processing (18 C.F.R. § 385.206(b)(11))**

An expedited resolution of this Complaint is necessary to eliminate

uncertainty and require MISO to initiate a Competitive Developer Selection

Process for the Indiana projects erroneously excluded from competition based on

the enjoined Indiana preference law, HEA 1420.  MISO has already released an

RFP for a portion of LRTP Project 35 that MISO partially excluded from

competition based on its Tariff application.  MISO has indicated that it expects to

amend Appendix A to LRTP Tranche 2.1 to designate the Tranche 2.1 projects

located in Indiana to incumbent transmission owners.  Once assigned,

Complainants expect the incumbent transmission owners to begin to invest in

developing the projects – seeking regulatory approvals and placing orders for

equipment – putting transmission ratepayers at cost risk for money spent on

improperly excluded and assigned projects.

**V.    CONCLUSION**

For the reasons raised herein, Complainants request that the Commission

grant this Complaint, find that MISO has violated Section VIII of Attachment FF

of its Tariff by excluding Tranche 2.1 regional projects located in Indiana from

competition, and direct MISO to include the LRTP Tranche 2.1 Indiana projects in

the Competitive Transmission Process unless another exclusion appropriately applies.  Further, to the extent that MISO may claim to have assigned the Indiana Projects during the period that the Preliminary Injunction was stayed, Complainants ask that the Commission declare that MISO's assignment violated Section V of the Tariff as described above.  Complainants request that the Commission issue its order on this Complaint on an expedited basis, on the earlier of within 20 days of MISO's Answer or before MISO's March 11-13 Board meeting.

Respectfully submitted,

By: /s/ *Michael R. Engleman*

Michael R. Engleman
Engleman Fallon, PLLC
1717 K St., N.W.
Suite 900
Washington, D.C. 20006
(202) 464-1330
mengleman@efenergylaw.com

Christina R. Switzer
Engleman Fallon, PLLC
823 Congress Ave, Suite 300-67
Austin, TX 78701
(202) 464-1330
cswitzer@efenergylaw.com

*Counsel to LSP Transmission
    Holdings II, LLC, LS Power
    Midcontinent, LLC, Central
    Transmission, LLC, and LS Power Grid
    DRS Holdings, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I have caused a copy of the foregoing Complaint and attachments to be served electronically on the Respondent to the individuals listed on the Commission's Corporate Officials List and interested persons, in accordance with 18 C.F.R. § 385.206(c).

By: *s/ Christina R. Switzer*

Engleman Fallon, PLLC
823 Congress Ave, Suite 300-67
Austin, TX 78701
(202) 464-1330
cswitzer@efenergylaw.com


Dated:  February 4, 2025

# ATTACHMENT A

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

| | | |
|---|---|---|
| **LSP TRANSMISSION HOLDINGS II, LLC, LS POWER MIDCONTINENT, LLC, CENTRAL TRANSMISSION, LLC, and LS POWER GRID DRS HOLDINGS, LLC** | ) ) ) ) ) ) ) | |
| **Complainants** | ) | **Docket No. EL25-___-000** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MIDCONTINENT INDEPENDENT SYSTEM OPERATOR, INC.** | ) ) | |
| **Respondent** | | |

NOTICE OF COMPLAINT
February 4, 2025

Take notice that on February 4, 2025, LSP Transmission Holdings II, LLC, LS Power Midcontinent, LLC, Central Transmision, LLC and LS Power Grid DRS Holdings, LLC (collectively, "Complainants") filed a formal complaint against the Midcontinent Independent System Operator, Inc. ("MISO") pursuant to Sections 206, 306 and 309 of the Federal Power Act, 16 U.S.C. §§ 824e, 825c, and 825h and 18 C.F.R. § 385.206, requesting that the Commission find that MISO has violated Attachment FF its Open Access Transmission, Energy and Operating Reserve Markets Tariff . The Complaint requests a refund effective date on the date the Complaint is filed.

Pursuant to Rules 206 and 212, the Complaint further contains a Motion for a shortened Answer period for MISO, seven (7) days from the filing of the Complaint.

Complainants certify that copies of the Complaint were served on contacts for the MISO as listed on the Federal Energy Regulatory Commission's ("Commission") list of Corporate Officials.

Any person desiring to intervene or to protest this filing must file in accordance with Rules 211 and 214 of the Commission's Rules of Practice and Procedure (18 C.F.R. §§ 385.211 and 385.214). Protests will be considered by the Commission in determining the appropriate action to be taken, but will not serve to make protestants parties to the proceeding.

Any person wishing to become a party must file a notice of intervention or motion to intervene, as appropriate. The Respondent's answer and all interventions, or protests must be filed on or before the comment date. The Respondent's answer, motions to intervene, and protests must be served on Complainants.

The Commission encourages electronic submissions of protests and interventions in lieu of paper using the "eFiling link at http://www.ferc.gov. Persons unable to file electronically should submit an original and 14 copies of the protest or intervention to the Federal Energy Regulatory Commission, 888 First Street, N.E., Washington, DC 20426.

This filing is accessible on-line at http://www.ferc.gov, using the "eLibrary" link and is available for review in the Commission's Public Reference Room in Washington, D.C. There is an "eSubscription" link on the web site that enables subscribers to receive email notification when a document is added to a subscribed docket(s). For assistance with any FERC Online service, please email FERCOnlineSupport@ferc.gov, or call (866) 208-3676 (toll free). For TTY, call (202) 502-8659.

Comment Date: 5:00 p.m. Eastern Daylight Time on (insert date).


Debbie-Anne A. Reese
Acting Secretary